475 P.2d 530

Earl RENNER and Zella Renner, husband and wife, Plaintiffs-Appellants,

v.

Clifford J. EDWARDS, Defendant-Respondent.

No. 10331.

Supreme Court of Idaho.

Aug. 28, 1969.

On Rehearing Oct. 8, 1970.

Melvin J. Alsager, Moscow, for appellants.

Eugene L. Miller, Coeur d'Alene, for respondent.

Langroise, Clark, Sullivan & Smylie, Boise, amicus curiae.

SHEPARD, Justice.

This case presents for decision a single question, to-wit: in an action for medical malpractice involving an alleged misdiagnosis, should this Court adopt the "discovery rule" previously adopted by this Court in medical malpractice actions involving the negligent leaving of a foreign object in a patient's body during surgery? The "discovery rule" sets forth that the cause of action in such case does not accrue until the patient learns, or in the exercise of reasonable care and diligence should have learned, of the negligence.

The instant case is an appeal from the dismissal of plaintiffs' complaint for the reason that the action was barred by the statute of limitations. The complaint alleges that the defendant-respondent held himself out to the public as a competent physician and surgeon, and the plaintiffs-appellants engaged his services in 1961. Upon examination of Zella Renner, he diagnosed a "gastrointestional condition/pathology" necessitating surgery in the form of a colostomy, which surgery he performed on March 21, 1961. It is alleged that the patient for three years thereafter suffered, among other problems, continual pain and

inability to control her normal bodily functions. Treatment by a different surgical specialist resulted in corrective surgery on July 15, 1964. Plaintiffs-appellants filed the instant action on June 6, 1966 seeking to recover a total of $114,623.60 as special and general damages, alleging that the defendant-respondent had misdiagnosed the patient's condition, acted in a field of surgery for which he was unqualified, and performed unnecessary surgery.

The applicable statutes of limitations are I.C. § 5–201, which, in pertinent part, provides:

"Civil actions can only be commenced within the periods prescribed in this chapter after the cause of action shall have accrued, * * *."

and I.C. § 5–219, which, in pertinent part, provides:

"Within two years:
\* \* \* \* \* \*
"4. An action to recover damages for an injury to the person, or for the death of one caused by the wrongful act or neglect of another."

Appellants contend that the time the cause of action accrues is the time when the plaintiff had knowledge, or in the exercise of reasonable care and diligence should have had knowledge, of the negligence constituting malpractice. Respondent, on the other hand, contends that the cause of action accrues at the time of the alleged malpractice, to-wit: the misdiagnosis and the initial surgery.

This Court in Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224 (1964), first enunciated the "discovery rule" in Idaho, therein setting forth the time when a cause of action accrues in a medical malpractice action as that point in time when a patient learns or in the exercise of reasonable care and diligence should have learned of the negligence. In the *Billings* case a foreign object was involved, to-wit: a gauze sponge had been left in the patient's body during surgery and remained undiscovered for 15 years thereafter until a second exploratory operation revealed its existence. A year after the second surgery a suit for malpractice was brought and the trial court dismissed the action on the basis that it was barred by our statutes of limitation. This Court reversed and, as aforesaid, adopted the "discovery rule." The *Billings* decision was restricted to the particular facts of that case involving the leaving of a foreign object in a patient's body.

Respondent contends, therefore, that in Idaho at least the so-called "discovery rule" applies only in foreign object cases, relying not only on *Billings,* but also upon Owens v. White, 342 F.2d 817, rehearing 380 F.2d 310 (9th Cir., 1967). This latter case interpreted the restrictive language in the *Billings* opinion and predicted that this Court would restrict the "discovery rule" to medical malpractice cases involving foreign objects. While Owens v. White, supra, may have been a correct inference based on the then existing Idaho decisions, our opinion today renders that decision an incorrect prediction of the future actions of this Court.

In Mr. Justice McQuade's opinion in *Billings* he amply reviews the conflicts in theory which led to the existing diversity in the various jurisdictions as to the adoption or non-adoption of the "discovery rule" in medical malpractice actions. He deals with the various exceptions which have been devised in some jurisdictions, such as the "continuing negligence" exception, wherein the cause of action is said to be non-accruing while the patient remains under the doctor's care, the theory of couching malpractice complaints in terms of contract, thereby giving the plaintiff the benefit of a longer period of time within which to file an action, and the third exception of the fraudulent concealment theory wherein the physician is claimed to be, either actually or constructively, fraudulent in concealing his negligent conduct from the patient. This Court in *Billings* rejected the opportunity of forcing that factual pattern into one of the previously mentioned exceptions, and clearly and forthrightly announced its adherence to the "discovery rule."

No purpose would be served in discussing the number of jurisdictions which reject or adhere to the "discovery rule" in misdiagnosis fact patterns. Suffice it to say that what was once termed the "majority" has been so eroded by recent opinions of various jurisdictions that adherence to or rejection of the "discovery rule" can in either case be considered the keeping of respectable company.

We are, as herein stated, faced with the problem of the application of the "discovery rule" to medical malpractice cases falling into categories other than foreign object cases. We believe the theories and reasons enunciated in *Billings* for the adoption of the "discovery rule" are equally applicable to the case at bar. See also Iverson v. Lancaster, N.D., 158 N.W.2d 507 (1968); Yoshizaki v. Hilo Hospital, 433 P.2d 220 (Hawaii, 1967); Wilkinson v. Harrington, R.I., 243 A.2d 745 (1968); Johnson v. Caldwell, 371 Mich. 368, 123 N.W.2d 785 (1963); Sacks, Statutes of Limitation and Undiscovered Malpractice, 16 Clev.-Mar. L. Rev. 65 (1967); Foreign Object Discovery and Misdiagnosis—Is There a Difference?, 29 U.Pitt.L.Rev. 341 (1967); Discovery Rule: Accrual of Cause of Action for Malpractice, 25 Wash. & Lee L.Rev. 78 (1968).

■ We conclude that the statute does not begin to run until the plaintiff knew or should have known of the defendant's negligence.

Respondent directs us to those cases which hold that statutes of limitations are statutes of repose designed to promote stability in the affairs of men and to make difficult, if not impossible, the litigating of stale or fraudulent claims. As was well said by the Supreme Court of Rhode Island in Wilkinson v. Harrington, supra:

"[Statutes of limitations] are founded in the soundest principles of public policy. Their existence stimulates the bringing of actions within the designated time limits when events and circumstances are still fresh in the minds of the parties and witnesses. Wood v. Carpenter, [101 U.S. 135, 25 L.Ed. 807 (1879)]; 1 Wood, Limitation of Actions, [§§ 2, 3, pp. 4–7 (4th ed., 1916)].

"The nature of the statute of limitations, however, and the underlying purpose which it serves are not that which is advanced here by respondents. The defense asserts that the paramount function of the statute of limitations is that it preserves social tranquility and that it should be narrowly construed to better achieve its purpose. We think their argument fails to take proper cognizance of the fundamental concept for which the statutes were designed. It is eminently clear that statutes of limitations were intended to prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard for want of seasonable prosecution. They are, to be sure, a bane to those who are neglectful or dilatory in the prosecution of their legal rights. 1 Wood, Limitation of Actions, § 4, p. 8. As a statute of repose, they afford parties needed protection against the necessity of defending claims which, because of their antiquity, would place the defendant at a grave disadvantage. In such cases how resolutely unfair it would be to award one who has willfully or carelessly slept on his legal rights an opportunity to enforce an unfresh claim against a party who is left to shield himself from liability with nothing more than tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses. Indeed, in such circumstances, the quest for truth might elude even the wisest court. The statutes are predicated on the reasonable and fair presumption that valid claims which are of value are not usually left to gather dust or remain dormant for long periods of time. Riddlesbarger v. Hartford Ins. Co., 74 U.S. (7 Wall.) 386, 19 L.Ed. 257; 1 Wood, Limitation of Actions, supra, § 4; Spath v. Morrow, supra [174 Neb. 38, 115 N.W.2d 581]. To those who are unduly tardy in enforcing their known rights, the statute of limitations operates to extinguish the remedies; in effect, their right ceases to create a legal obligation and in lieu thereof a moral obligation may arise in the aid of which courts

will not lend their assistance. Cf. 34 Am. Jur., 'Limitation of Actions,' § 11, p. 20.

"Our statute of limitations is bottomed on the same theory and policy mentioned above. We cannot subscribe to the contentions of the defense that the statute is at odds with the discovery rule in malpractice cases. On the contrary, we believe the rule is compatible with the statute of repose. It would, in our opinion, be manifestly unjust to bar the enforcement of injury claims brought by a plaintiff who was not, nor could not have known that he was, the victim of tortious conduct because the consequent harm was unknowable within two years of the negligent act. In this age of enlightened medicine and highly sophisticated curative treatment it is very likely that the maturation of injury resulting from negligent treatment would not evidence itself for well after the two years provided for in the statute of limitations. See Estep and Van Dyke Radiation Injuries: Statute of Limitations Inadequacies In Tort Cases, 62 Mich.L.Rev. 753 (1964). This thought becomes particularly disturbing when one realizes that the latent injuries arising from medical malpractice would very likely go undetected by the victim, as only trained and skillful practitioners of medicine could ascertain whether a patient has been mistreated. Even the physical symptoms which might herald future inquiry may well be beyond the comprehension or perception of the average layman.

"We are also not unmindful of the conflicting policies which the issue before us raises between doctors and the general public. It is customarily advanced in these cases that doctors are unjustly prejudiced by the discovery rule as its application sanctions stale law suits in which the medical practitioner is hard pressed to defend because of faded recollections, perishable evidence and imperfect records. Of course, the countervailing policy argument, which also has merit, is that the public should be protected against medical mistreatment which does not become ascertainable until after the statutory period runs. These antipodal arguments seem to be fairly resolved in favor of the public. It would appear from the modern trend towards the application of the discovery rule, that courts are beginning to conclude that only the negligent physician is protected by the strict interpretation of the statute of limitations in malpractice cases at the cruel expense of the public and of the competent physician. Cf. Note The Statute of Limitations In Actions For Undiscovered Malpractice, 12 Wyo.L.J. 30, for an illuminating discussion on this point. As the supreme court of New Jersey recently noted, 'If, as is to be hoped, the resulting jeopardy to defendants produces a greater measure of care in connection with surgical operations, so much the better.' Fernandi v. Strully, supra, 35 N.J. 434, 451, 173 A.2d 277, 286.

"Hence, it is our firm belief that the discovery rule in medical malpractice cases is preferable to the adoption of the strict construction of the statute of limitations. When § 9-1-14, the statute of limitations for personal injury, is viewed with due allegiance being given to its intended purposes, the adoption of the discovery rule is virtually ineluctable. To construe the statute narrowly so as to preclude a person from obtaining a remedy simply because the wrong of which he was the victim did not manifest itself for at least two years from the time of the negligent conduct, is clearly inconsistent with the concept of fundamental justice. To require a man to seek a remedy before he knows of his rights, is palpably unjust. Under such circumstances in order for a patient to secure and protect his legal rights against doctors for malpractice, the patient would be required to submit himself to complete examinations by a series of independent physicians after every operation or treatment he received from the physician of his first choice. The unreasonableness of such a result is self-evident. No statute should be construed to bring about a patently inane result; moreover, we have often said the legislature could never be presumed to have intended to enact laws which are absurd, unjust or

unreasonable. State v. Haggerty, 89 R.I. 158, 151 A.2d 382. Accordingly, we prefer to follow the discovery rule in medical malpractice cases because in our opinion the theory behind it is eminently fair and perfectly consistent with the function and nature of limitation acts."

The problem of the foreign object case, as contrasted with misdiagnosis, is specifically dealt with in 29 University of Pittsburg Law Review 341, stating:

"In the same connection, the courts have overcome their misgivings about fictitious claims in other areas and their decisions have gone largely unabused. Indeed, with misdiagnosis, the adversary system itself imposes a strenuous burden of proof on the claiming plaintiff that more than offsets any danger of fraud on his part and, in the instant situation, militates strongly against his chances of success. For the misdiagnosed plaintiff must prove that 1.) the doctor's diagnosis was incorrect and 2.) that the error was not a failure of judgment but negligence, as judged by the standard of care required of the physician *at the time* of the injury, and 3.) the causal relationship of the negligent act and the plaintiff's injury. The plaintiff is further burdened with the renowned reluctance of the medical profession to offer opinions on the conduct of a fellow doctor, especially in the shadowed area of misjudgment vis-a-vis negligence.

"The burden of proof in foreign object cases is, of course, easier to sustain because of the type of injury done, the procedural devices available, and the nature of the evidence in the case. This should not be, however, the basis for policy distinction. To allow one unknowing plaintiff to sue because he has better proof and to bar another unknowing plaintiff because his burden is more onerous, could fit the needs of some irrelevant logic but hardly the ends of responsive justice.

"As to the argument for stale proof, the danger is frequently sounded but the worry is often hollow. By any standard, medical record keeping is in a far advanced state from the time stale proof was a dominant reason to cut off claims and even if it were not, the claiming plaintiff is under the same limitations as the physician and perhaps in medical cases, an even greater one. (footnotes omitted)" (Emphasis original)

■■ We come finally to respondent's argument that to extend the "discovery rule" would be to "open a Pandora's Box and release countless demons for this court to grapple with" and that such requested extension of the "discovery rule" should be left to the legislature rather than this Court indulging in judicial legislation. We respond by indicating that rejection of the "discovery rule" is as much indulging in judicial legislation as is the adoption of the rule. Berry v. Branner, 245 Or. 307, 421 P.2d 996 (1966); Morgan v. Grace Hospital, 149 W.Va. 783, 144 S.E.2d 156 (1965). Our legislature did not define the time of accrual as being either the time of the performance of the negligent act or the time of the acquisition of knowledge of the negligent act. That was done by this Court. To adopt the "discovery rule" is to imply the existence of knowledge as a requirement for the accrual of an action and thus supply knowledge as a statutory requirement. Conversely, to reject the rule is to imply that the legislature considered the requirement of knowledge as an element of accrual and deliberately excluded such terminology from the statute. Legislative inaction should not be ignored in determining legislative intent, but to imply such an intent in this case as a result of legislative inaction is unreasonable. Berry v. Branner, supra. At the moment, our statutes, as most others across this country, are silent as to the interrelationship between "knowledge" and "accrual." We are required to reach a decision without assistance from our legislative brethren. We select the alternative interpretation of our statute, which we believe accords with our concept of justice and reason.

The judgment of dismissal is reversed and the matter remanded to the District Court for trial on the merits. Costs to appellants.

McQUADE and SPEAR, JJ., concur.

McFADDEN, Chief Justice (dissenting).

In Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224 (1964), this court reiterated the holding of Trimming v. Howard, 52 Idaho 412, 16 P.2d 661 (1932), that the gist of a malpractice action is negligence, not contract, fraud or mistake. In the *Trimming* case it was also recognized that the applicable statutes of limitation are I.C. § 5–210 and § 5–219(4), and held that the cause of action arose at the time of the negligent act. This case has not been reversed. The *Billings* case dealt exclusively with the facts then before the court, which involved a situation where a foreign object had been left in the plaintiff's body during surgery. This object was not discovered until a subsequent operation was performed some five years subsequent to the first operation. This court in the majority opinion stated:

"We will, therefore, adhere to the following rule: where a foreign object is negligently left in a patient's body by a surgeon and the patient is in ignorance of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of such foreign object in his body. Seitz v. Jones, supra. [370 P.2d 300 (Okl. 1961)]."

In Seitz v. Jones, the Supreme Court of Oklahoma had before it a case wherein a hypodermic needle was left in a patient's body during an operation performed on January 13, 1952. The patient was not advised of the object's presence until she was informed by one of the defendants in September 1953 that it was revealed in an X-ray taken by the defendant in June 1953. That court held the two year statute of limitations commenced to run in September 1953.

In the *Billings* case, this court quoted from Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961), as follows:

"It must be borne in mind that Mrs. Fernandi's claim does not raise questions as to her credibility *nor does is rest on matters of professional diagnosis, judgment or discretion. It rests on the presence of a foreign object within her abdomen following an operation performed upon her by the defendant-doctors.* Here the lapse of time does not entail the danger of a false or frivolous claim nor the danger of a speculative or uncertain claim. The circumstances do not permit the suggestion that Mrs. Fernandi may have knowingly slept on her rights but, on the contrary, establish that the cause of action was unknown and unknowable to her until shortly before she instituted suit. Justice cries out that she fairly be afforded a day in court and it appears evident to us that this may be done, *at least in this highly confined type of case,* without any undue impairment of the two-year limitation or the considerations of repose which underlie it." 173 A.2d at 286. (Emphasis supplied.)

I am constrained to agree with the view expressed by the Court of Appeals in Owens v. White, 380 F.2d 310 (9th Cir. 1967), when it stated:

"Had the Idaho Supreme Court not harbored the intent to limit sharply the application of the discovery rule in malpractice cases, it would have been unnecessary for it to emphasize that the purpose of statutes of limitations 'is to prevent fraudulent and stale actions from springing up after a great lapse of time * * *.' It employed language which must be significant and clearly implies a limitation, namely, 'These considerations are not present in a *foreign object* case.' 389 P.2d at 231 (Emphasis supplied.) Moreover, as we have seen, the Idaho court chose, in supporting its decision in

*Billings,* to quote language from a New Jersey opinion, wherein the court, concerned with a situation involving surgical malpractice of the 'foreign object' variety, carefully distinguished such a case from one which would 'raise questions as to * * * credibility [or] rest on matters of professional *diagnosis,* judgment, or discretion. * * *.' 173 A.2d at 286 (Emphasis supplied.) The New Jersey court limited its holding expressly, as the Idaho court is believed by us to have done impliedly, to 'this [foreign object] highly confined type of case.' Ibid." 380 F.2d at 315.

In dismissing the instant action the trial court considered, in my opinion quite properly so, that the holding in Billings v. Sisters of Mercy of Idaho, supra, was limited to a foreign object situation. The rationale for the *Billings* case was that the claim was based on the discovery of a foreign object left in the patient's body during an operation. The time of such negligence was established by the time of the operation, and there can be no doubt as to the negligence. There is no issue presented as to professional standards or diagnosis. Lapse of time would present no difficulty in establishing that negligence nor would the lapse of time be indicative of any frivolous or false claim. Fernandi v. Strully, supra. The same cannot be said however, in a case involving a claim of malpractice based on misdiagnosis, or improper diagnosis, of a patient's ailments.

It is my firm conviction that the so-called "discovery rule" should not be employed to toll the running of the statute of limitations, I.C. § 5–219(4), which the legislature enacted, as is being done in the majority opinion in this case. There is nothing to be gained by belaboring the reader with the purposes for the enactment of statutes of limitation and the objects to be resolved by such legislative enactments. Suffice it to say that every time a doctor now diagnoses for his patient, his contingent exposure to a claim of malpractice for misdiagnosis or improper diagnosis is unlimited as to time.

The same "discovery rule" logically could be applied to the professional decisions made by engineers, architects, dentists, attorneys and other professions. Presently, at least insofar as attorneys are concerned, it is generally held that in the absence of fraudulent concealment, the statute of limitations begins to run at the time of the neglect or misconduct and not from the time when the wrong is discovered or the consequential damages are felt. Annot: 118 A.L.R. 215.

Any expansion of liability should properly be reserved for legislative action, not accomplished by judicial fiat. See dissent in Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 505, 389 P.2d 224. See also Meade v. Freeman, 93 Idaho 389, 462 P.2d 54 (1969).

The judgment of dismissal of the trial court should be affirmed.

DONALDSON, J., concurs herein.

On Rehearing.

SHEPARD and McQUADE, JJ., adhere to the original opinion.

DONALDSON, J., concurs and specially concurs.

McFADDEN, C. J., dissents and SPEAR, J., concurs in the dissent.

DONALDSON, Justice (specially concurring).

I concur with the majority's opinion that in cases of negligent misdiagnosis the Statute of Limitations begins to run from the time the wrongful act was discovered or the date that the plaintiff, by the exercise of reasonable diligence, should have discovered it. The Court has previously adopted this rule as to foreign objects left within the body in Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224 (1964) and I can see no rational basis for a distinction between one kind of malpractice and the other. It is manifestly inconsistent and unfair to bar a negligently injured party's cause of action before he

even had an opportunity to discover that it existed. This is as true where it consists of negligent misdiagnosis or treatment as when a foreign object is left within the body. The application of the "discovery rule" to all medical malpractice cases seems to be the modern trend. The courts in both Oregon and Washington have recently extended the "discovery rule" to cases of misdiagnosis. See Samuelson v. Freeman, 75 Wash.2d 894, 454 P.2d 406 (1969) and Frohs v. Greene, 452 P.2d 564 (Or.1969). However, because of the possible danger of fraudulent and stale claims in cases of this nature, I feel that the plaintiff should be required to affirmatively allege and prove facts as to when and under what circumstances the dscovery was made; facts to show that the plaintiff is not at fault for not having made an earlier discovery; and furthermore, prove that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry. Hurlimann v. Bank of America Nat. Trust and Sav. Ass'n, 141 Cal. App.2d 801, 297 P.2d 682 (1956); Wohlgemuth v. Meyer, 139 Cal.App.2d 326, 293 P.2d 816 (1956); Myers v. Stevenson, 125 Cal.App.2d 399, 270 P.2d 885 (1954). In this case the plaintiffs alleged that immediately after the operation and for a period of more than three years Zella Renner continued to suffer pain and the added embarrassment and discomfort of not being able to control her bodily functions. Thus in the instant case the facts alleged are insufficient to meet these requirements and in fact tend to affirmatively show that the appellant had knowledge of the injury. However the issue as to when the plaintiff discovered the wrongful act or should have discovered it by the exercise of reasonable care is for the trier of the facts. Costa v. Regents of University of California, 116 Cal.App.2d 445, 254 P.2d 85 (1953); Hemingway v. Waxler, 128 Cal.App.2d 68, 274 P.2d 699 (1954); Bowers v. Olch, 120 Cal. App.2d 108, 260 P.2d 997 (1953). I, therefore, feel that the case should be reversed with leave for appellants to amend their complaint to meet these requirements if they can do so. In the event the case comes to trial, it is emphatically pointed out that the plaintiff in this type of lawsuit has the burden of proving:

(1) that the doctor's diagnosis was incorrect;

(2) that the error was not a failure of judgment but negligence as judged by the standard of care required by a physician at the time of the injury;

(3) the causal relationship between the negligent act and the plaintiff's injury;

(4) when and under what circumstances the discovery was made;

(5) that he was not at fault for not making an earlier discovery;

(6) that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.

McFADDEN, Chief Justice, (dissenting).

The law is firmly established that the statute of limitations begins to run from the time that the cause of action has accrued. See 51 Am.Jur.2d Limitations of Actions, § 107, p. 679. See also Trimming v. Howard, 52 Idaho 412, 16 P.2d 661 (1932). The key question, then, is when has a cause of action accrued for the purpose of applying the statute of limitations? The general rule, which is supported by the weight of authority, is that the cause of action accrues at the time of the commission of the negligence which is the basis for the actions. It is stated in 1 Am.Jur. 2d Actions, § 88, p. 617, that

" * * * A cause of action accrues when the person in whose favor it arises is first entitled to institute a judicial proceeding ·for the enforcement of his rights. In the case of a tort, the cause of action accrues when the wrongful act is committed; * * *.

Generally, it may be said that a cause of action accrues at the moment of a wrong, default, or delict by the defendant and the injury of the plaintiff, although the actual damage resulting

therefrom may not be discovered until some time afterward, if the injury however slight, is complete at the time of the act."

This is the rule adopted by this court in Pridgeon v. Greathouse, 1 Idaho 359 (1871). In that case this court stated that the statute of limitations begins to run from the time that the plaintiff might first have commenced his action. In the present case the alleged negligent acts took place on March 21, 1961, and it is from this date that the two year statute of limitations began to run.

In Trimming v. Howard, supra, which also was a medical malpractice case, this court considered issues somewhat similar to those here involved. In that case, while a physician was injecting serum into the spinal column, the hypodermic needle broke off and the needle remained in the plaintiff's back. Later surgery was performed to remove the needle, and the plaintiff was lead to believe it had been removed when in fact it had not. Following discovery of the needle, the plaintiff instituted the action for damages from the physician. This court held that the cause of action arose at the time the broken needle was left in the patient's back and that the action was therefore barred by the statute of limitations. Trimming v. Howard, supra, was discussed at length in Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224 (1964), but was not overruled.

Appellants rely heavily upon this court's decision in Billings v. Sisters of Mercy of Idaho, supra, which adopted the so-called "discovery rule" in cases in which a foreign object is left in a patient's body during surgery. It is my conclusion that that case, however, is an exception to the general rule that the statute of limitations commences to run from the time of the occurrence of the negligence. This court in Billings v. Sisters of Mercy of Idaho limited its decision to foreign object cases, stating:

"We will, therefore, adhere to the following rule: where a foreign object is negligently left in a patient's body by a surgeon and the patient is in ignorance of the fact, and consequently of his right of action for malpractice, the cause of action does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of such foreign object in his body." 86 Idaho at 497, 498, 389 P.2d at 232.

This court's decision in Billings v. Sisters of Mercy of Idaho, supra, was considered by the Ninth Circuit Court of Appeals in Owens v. White, 380 F.2d 310 (9th Cir. 1967), which, on the basis of the language of *Billings*, reached the same conclusion that I reach here that the rationale of that case is limited to foreign object cases.

"Had the Idaho Supreme Court not harbored the intent to limit sharply the application of the discovery rule in malpractice cases, it would have been unnecessary for it to emphasize that the purpose of statutes of limitations 'is to prevent fraudulent and stale actions from springing up after a great lapse of time * * *.' It employed language which must be significant and clearly implies a limitation, namely, 'These considerations are not present in a *foreign object* case.' 389 P.2d at 231 (Emphasis supplied). Moreover, as we have seen, the Idaho court chose, in supporting its decision in *Billings*, to quote language from a New Jersey opinion, wherein the court, concerned with a situation involving surgical malpractice of the 'foreign object' variety, carefully distinguished such case from one which would 'raise questions as to * * * credibility [or] rest on matters of professional *diagnosis*, judgment, or discretion. * * *' 173 A.2d at 286. (Emphasis supplied.) The New Jersey court limited its holding expressly as the Idaho court is believed by us to have done impliedly, to 'this [foreign object] highly confined type of case.' Ibid" 380 F.2d at 315.

There are sound reasons for distinguishing between foreign object cases and cases resting upon allegations of misdiagnosis. Some of these reasons were stated in Billings v. Sisters of Mercy, supra, in a quotation from Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961):

> "It must be borne in mind that Mrs. Fernandi's claim does not raise questions as to her credibility *nor does it rest on matters of professional diagnosis, judgment or discretion. It rests on the presence of a foreign object within her abdomen following an operation performed upon her body by the defendant-doctors.* Here the lapse of time does not entail the danger of a false or frivolous claim nor the danger of a speculative or uncertain claim. The circumstances do not permit the suggestion that Mrs. Fernandi may have knowingly slept on her rights but, on the contrary, establish that the cause of action was unknown and unknowable to her until shortly before she instituted suit. Justice cries out that she fairly be afforded a day in court and it appears evident to us that this may be done, *at least in this highly confined type of case,* without any undue impairment of the two-year limitation or the considerations of repose which underlie it." 173 A.2d at 286. (Emphasis supplied.)

I.C. § 5–218(4) specifically states that in actions for relief on the ground of fraud or mistake, "The cause of action * * * [is] not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." It is clear, then, that the legislature has in some instances chosen to adopt the discovery rule. Applying the well established rule of statutory construction, *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), it should be equally clear that the legislature did not intend to apply the discovery rule to the statute of limitations governing personal injuries. Had it so intended, it would have clearly said so as it did in I.C. § 5–218(4). See dissent in Billings v. Sisters of Mercy of Idaho, su-

pra; Summers v. Wallace Hospital, 276 F.2d 831 (9th Cir. 1960); Roybal v. White, 72 N.M. 285, 383 P.2d 250 (N.M.1963); Peppas v. Marshall & Ilsley Bank, 2 Wis. 2d 144, 86 N.W.2d 27 (1957).

Moreover, whether the discovery rule should be applied to the statute of limitations governing personal injuries is a question of policy more appropriately within the competence of the legislature. As was stated in the dissent in Billings v. Sisters of Mercy of Idaho, supra,

> "As heretofore pointed out, the legislature at sundry times has amended sections of the statute of limitations, and has left others unchanged from the time of original adoption in 1881. The legislature, however, has not as yet imposed a discovery date as the deemed date of accrual of a cause of action grounded upon personal injury. Such represents the continuing policy on the part of the legislature which policy should not be altered by judicial fiat simply because in the particulars under consideration, it may be considered harsh in its application to malpractice cases.

> \*  \*  \*  \*  \*  \*

> * * * The judiciary could not enter into the field of determining policy reserved to the legislative branch of government. Oneida County Fair Board v. Smylie, 86 Idaho 341, 386 P.2d 374 (1963)." 86 Idaho at 505, 506, 389 P.2d at 238.

Justice Donaldson in his special concurring opinion cites and relies on Samuelson v. Freeman, 454 P.2d 406 (Wash.1969), and Frohs v. Greene, 452 P.2d 564 (Or. 1969), as authority for the position he takes.

The Washington Supreme Court in Samuelson v. Freeman, supra, (decided in May, 1969) cited the case of Ruth v. Dight, 453 P.2d 631 (April 10, 1969), for the proposition that in a "foreign object" type of case the statute of limitations did not commence to run until such time as discovery of the foreign object was made or reasonably should have been made. In Samuelson v.

Freeman, supra, the Washington court extended the so-called discovery rule in a novel fashion to medical malpractice cases of diagnosis and treatment, holding, in effect, that if malpractice is claimed during a continuous and substantially uninterrupted course of treatment the statute of limitations does not commence to run at least until the treatment of the particular illness or condition has terminated. The court also held, however, that the statute of limitations ordinarily begins to run either from the occurrence of the negligent act or omission if the injuries therefrom are manifest, or if not apparent, from the time the patient could or should have discovered the injury.

In the instant case there are no allegations of fact that would bring it within the scope of the ruling in the Washington case of Samuelson v. Freeman, supra.

As concerns the Oregon case, Frohs v. Greene, supra, that court dealt with the issue (as in the instant case) of whether the "discovery rule" as promulgated in Berry v. Branner, 245 Or. 307, 421 P.2d 996 (1966), a foreign objects case, should be extended to a medical malpractice case of diagnosis and treatment. In Frohs v. Greene, supra, the court applied the discovery rule. It is of interest to note that subsequent to the decision in Berry v. Branner, supra, decided December 28, 1966, the legislature in Oregon amended their statute of limitations to encompass the "discovery rule" as applied to foreign object cases. Ch. 406 Oregon Laws 1967, p. 823. It is also noteworthy that in Frohs v. Greene, supra, decided April 2, 1969, the court took note of the amendment of the Oregon statute of limitations, and further that in 1969 the Oregon legislature again amended their statute of limitations to apply the discovery rule to "An action to recover damages for injuries to the person arising from any medical, surgical or mental treatment, omission or operation." Ch. 642 Oregon Laws 1969, p. 1586.

It is my firm conviction that the so-called "discovery rule" should not be employed to toll the running of the statute of limitations, I. C. § 5–218(4), which the legislature enacted, as is being done in the majority opinion in this case. There is nothing to be gained by belaboring the reader with the purposes for the enactment of statutes of limitation and the objects to be resolved by such legislative enactments. Suffice it to say that every time a doctor makes a diagnosis for his patient, his contingent exposure to a claim of malpractice for misdiagnosis or improper diagnosis is unlimited as to time.

The same "discovery rule" logically could be applied to the professional decisions made by engineers, architects, dentists, attorneys and other professions. Presently, at least insofar as attorneys are concerned, it is generally held that in the absence of fraudulent concealment, the statute of limitations begins to run at the time of the neglect or misconduct and not from the time when the wrong is discovered or the consequential damages are felt. Annot: 118 A.L.R. 215.

Any expansion of liability should properly be reserved for legislative action, not accomplished by judicial fiat. See dissent in Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 505, 389 P.2d 224. See also Meade v. Freeman, 93 Idaho 389, 462 P.2d 54 (1969).

It is my conclusion that the cause of action accrued at the time of the alleged negligent act, i. e., 1961. The complaint not being filed until 1966, it is my opinion that the action is barred by the provisions of I.C. § 5–218(4), and that the judgment of the district court dismissing the action should be affirmed.

SPEAR, J., concurs in this dissent.