526 P.2d 835

**Kenneth W. JOHNSON, Plaintiff-Appellant,**

**v.**

**D. C. STODDARD and A. William Brunt, Defendants,**

**and**

**A. William Brunt, Jr., Defendant-Respondent.**

**No. 11179.**

Supreme Court of Idaho.

March 28, 1974.

---

St. Clair, St. Clair, Hiller & Benjamine, Idaho Falls, for plaintiff-appellant.

Merrill & Merrill, Pocatello, for defendant Stoddard.

Holden, Holden, Kidwell, Hahn & Crapo, Idaho Falls, for defendant-respondent.

SHEPARD, Chief Justice.

This is an appeal from a summary judgment in favor of a defendant doctor in a medical malpractice action. The action resulted from the alleged failure of defendant-respondent Dr. Brunt to discover and remove drains which Dr. Stoddard had earlier inserted in Johnson's back. The sole issue on this appeal is whether the statute of limitations began to run at the time Brunt treated Johnson or at the time that Johnson actually discovered, or should have discovered, Dr. Brunt's alleged negligence in failing to remove the drains.

In August, 1967 plaintiff-appellant Johnson was bucked off an uncooperative horse and suffered a large hematoma on the right side of his lower back. Some days later Johnson consulted defendant, Dr. D. C. Stoddard, who inserted two Penrose drains in the hematoma. The drains were rubber tubes one-half inch in diameter and two and one-half to three inches long. A week later Johnson's wife removed the dressing covering the hematoma but failed to find the Penrose drains. She and her husband searched Johnson's person, clothing and the bedding without discovering the missing drains. The following day Dr. Stoddard examined Johnson and failed to find the missing drains.

Thereafter Johnson's injury refused to heal properly and eventually two lumps developed, one at the site of the original hematoma on Johnson's right lower back and the second some six inches away, closer to his spine. In February, 1968 Johnson consulted Dr. Brunt complaining about the lumps. Dr. Brunt apparently gave Johnson some medication and told him that if the lumps did not subside they would have to be removed.

Thereafter Johnson's back continued to pain him severely and the lumps persisted. Johnson returned to Dr. Brunt on August

17, 1968. During that consultation Johnson allegedly told Dr. Brunt that the drains originally installed by Dr. Stoddard had disappeared. On August 18, 1968 Dr. Brunt surgically removed the two lumps and installed two new drains in Johnson's back. During the surgery Dr. Brunt did not discover the drains installed by Dr. Stoddard. Subsequently, Dr. Brunt did remove the two drains that he (Dr. Brunt) installed on August 18, 1968.

Thereafter Johnson's back continued to annoy him and in December, 1968 he consulted Dr. Andrew J. Wehler in Dillon, Montana. Dr. Wehler X-rayed Johnson's back and the X-ray results prompted him to surgically excise a sinus area in Johnson's back located near the original hematoma. During this operation on December 18, 1968 Dr. Wehler discovered the two Penrose drainage tubes originally installed by Dr. Stoddard.

Johnson filed this action on December 14, 1970 against Doctors Stoddard and Brunt. He sued Dr. Stoddard on the basis of Stoddard's alleged negligence in inserting and failing to remove the Penrose drains. Johnson sued Dr. Brunt on the basis of Brunt's alleged negligence both in failing to diagnose the existence of the Stoddard drains and in failing to remove them. The district court granted summary judgment in favor of Dr. Brunt. Dr. Stoddard remains as a party defendant in the action but is not a party to this appeal.

Considering the totality of the pleadings, depositions and interrogatories it is apparent that there remain genuine issues of material fact concerning Dr. Brunt's alleged negligence. Under I.R.C.P. 56(c) and I.R.C.P. 56(e) we conclude that the district court erred in entering summary judgment for Dr. Brunt *unless* Johnson's action was barred by the two year statute of limitations found in I.C., § 5–219(4) as it existed at the time this action was filed. Clearly Johnson's action is barred if the statute of limitations began to run from the time of Dr. Brunt's August, 1968 treatment.

We conclude that our decision in Renner v. Edwards, 93 Idaho 836, 475 P.2d 530 (1969) controls the instant case. In *Renner* we held that in medical malpractice actions involving misdiagnosis the statute of limitations does not begin to run until the plaintiff knew or reasonably should have known of the defendant's negligence. *Renner* effectively extended the so-called "discovery rule" first announced in Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224 (1964). *Billings* was confined to its "hidden instrument" fact pattern. *Renner* extended the discovery rule to circumstances involving negligent misdiagnosis.

In *Renner* the plaintiff consulted defendant who diagnosed her ailment as a "gastrointestinal condition pathology" necessitating a colostomy. After surgery the plaintiff continued to suffer distress and was unable to control her normal bodily functions. Three years after the surgery plaintiff consulted another doctor who performed additional surgery. As a result of that surgery it was allegedly discovered for the first time that Dr. Edwards' initial diagnosis was erroneous and that the colostomy was unnecessary. In *Renner* we held that plaintiff's action was not barred by I. C. § 5–219(4) because she filed her action within two years of the date of her discovery of the allegedly negligent misdiagnosis. In *Renner* we quoted with approval the following language from Wilkinson v. Harrington, 104 R.I. 224, 243 A.2d 745, 753 (1968):

"Hence, it is our firm belief that the discovery rule in medical malpractice cases is preferable to the adoption of the strict construction of the statute of limitations. When § 9–1–14, the statute of limitations for personal injury, is viewed with due allegiance being given to its intended purposes, the adoption of the discovery rule is virtually ineluctable. *To construe the statute narrowly so as to preclude a person from obtaining a remedy simply because the wrong of which he was the victim did not manifest itself for at least*

*two years from the time of the negligent conduct, is clearly inconsistent with the concept of fundamental justice. To require a man to seek a remedy before he knows of his rights, is palpably unjust.* Under such circumstances, in order for a patient to secure and protect his legal rights against doctors for malpractice, the patient would be required to submit himself to complete examinations by a series of independent physicians after every operation or treatment he received from the physician of his first choice. The unreasonableness of such a result is self-evident." (Emphasis supplied)

■ Returning to the instant case, we note that the gravamen of Johnson's complaint is that he informed Dr. Brunt of the missing Penrose drains and that Dr. Brunt, after examining Johnson and operating on him, did not determine that the drains were responsible for Johnson's discomfort. We conclude that at trial the evidence could establish that a proper diagnosis

would have disclosed the missing drains. Therefore we conclude that the instant case comes within the ambit of Renner v. Edwards, and we hold that the statute of limitations did not begin to run until the missing drains were discovered, or in the exercise of reasonable care, should have been discovered.

There are disputed questions of fact for resolution at trial. Some of the disputed facts may indicate when the statute began to run. It is not established without dispute that Johnson was aware that the Stoddard drains were still in his back when he consulted Dr. Brunt. Nor is it established without contradiction whether Johnson advised Dr. Brunt of the missing drains or whether Dr. Brunt was negligent in failing to discover the missing drains. All these are questions for resolution at trial, and summary judgment in favor of Dr. Brunt was therefore erroneous.

■ Respondent argues that the 1971 amendments to I.C. § 5–219(4) [1] indicate a

---

1. Be It Enacted by the Legislature of the State of Idaho:

SECTION 1. That Section 5–219, Idaho Code, be, and the same is hereby amended to read as follows:

5–219. Actions against officers, for penalties, on bonds, and for professional malpractice or for personal injuries.—Within two (2) years:

* * *

4. An action to recover damages for professional malpractice, or for an injury to the person, or for death of one caused by the wrongful act or neglect of another, including any such action arising from breach of an implied warranty or implied covenant; provided, however, when the action is for damages arising out of the placement and inadvertent, accidental or unintentional leaving of any foreign object in the body of any person by reason of the professional malpractice of any hospital, physician or other person or institution practicing any of the healing arts or when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party knows or

in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of; but in all other actions, whether arising from professional malpractice or otherwise, the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer, and, provided further, that an action within the foregoing foreign object or fraudulent concealment exceptions must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission complained of, whichever is later. The term "professional malpractice" as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho. This subsection shall not affect the application of section 5–243, Idaho Code, except as to actions arising from professional malpractice. Neither shall this subsection be deemed or construed to amend, or repeal section 5–241, Idaho Code.

legislative intent to have the statute of limitations run from " * * * the occurrence, act or omission complained of." We do not reach that issue because ch. 180 was not effective until March 24, 1971, long after this cause of action arose. We find no legislative intent that ch. 180 should be applied retroactively. No law in Idaho will be applied retroactively in the absence of a clear legislative intent to that effect. Edwards v. Walker, 95 Idaho 289, 507 P.2d 486 (1973).

Respondent Brunt contends that Johnson v. Gorton, 94 Idaho 595, 495 P.2d 1 (1972) requires a result contrary to that reached herein. He argues that *Johnson* should control because the case at bar also involves the negligent failure to remove a foreign object. We note, however, that *Johnson* is not a genuine foreign object case. In *Johnson* the plaintiff consulted with the defendant doctor for treatment of a gunshot wound. Both plaintiff and the defendant doctor were aware that plaintiff's injury was caused by a bullet. The plaintiff in *Johnson* alleged quite inconsistently both that the doctor had failed to disclose the presence of the bullet and that the doctor had led the plaintiff to believe that the bullet had been removed. *Johnson* turned on fraudulent concealment. The precise holding therein was that summary judgment was properly entered against the plaintiff because of her failure to allege sufficient facts to establish a triable issue regarding fraudulent concealment. It is clearly stated in *Johnson* that its facts did not bring the case within either the *Billings* foreign object rule or the *Renner* misdiagnosis rule. Hence *Johnson* is inapplicable to the case at bar.

It is apparent that the 1971 amendment to the statute of limitations severely narrows the *Renner* rule. Since the instant case arose prior to the amendment our ruling is unique in that it will only establish precedent regarding malpractice cases arising before March 24, 1971. Nevertheless, the rule established in *Renner* is alive and well insofar as it pertains to cases arising prior to March 24, 1971.

The judgment of the district court is reversed and remanded for further proceedings consistent with this opinion. Costs to the appellant.

DONALDSON, J., concurs; BAKES, J. concurs in the result.

McFADDEN, Justice (specially concurring).

The majority opinion relies on the case, Renner v. Edwards, 93 Idaho 836, 475 P.2d 530 (1969), as the basis and rationale for reversing the summary judgment in this case. Although I still adhere to my views expressed in my dissent in Renner v. Edwards, supra, I realize that this is the law at this time and I am forced to concur in the majority opinion.

McQUADE, Justice (dissenting).

This action comes to this Court in the form of an appeal from a judgment of dismissal based on the respondent's motion for summary judgment that alleged that the plaintiff-appellant Kenneth W. Johnson's action was barred by the statute of limitations.[1] A review of the record demonstrates that Johnson failed to present sufficient materials in opposition to the motion for summary judgment to establish a triable issue of fact and therefore the district court's judgment of dismissal should be affirmed.

Summary judgment can be granted only when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.[2] In addition, this Court has repeatedly held that the facts should be liberally construed in favor of the party against whom summary judg-

1. I.C. § 5–219 (amended 1971).

2. I.R.C.P. 56(c); Schaefer v. Elswood Trailer Sales, 95 Idaho 654, 516 P.2d 1168 (1973); Turner v. Mendenhall, 95 Idaho 426, 510 P.2d 490 (1973); Bryan and Company v. Kieckbusch, 94 Idaho 116, 482 P.2d 91 (1971).

ment is sought and all doubts are to be resolved against the moving party.[3] The defendant-respondent Dr. A. William Brunt's motion for summary judgment was based on I.C. § 5–219.[4] which provides that an action to recover for injuries to the body must be brought within two years. Johnson alleges that Dr. Brunt committed the malpractice in August 1968, but his complaint was not filed until December 1, 1970, which is in excess of the two year limitation. The procedure by which a plaintiff can overcome a motion for summary judgment based on the statute of limitations was set forth in the case of Johnson v. Gorton.[5] In that case it was held that the plaintiff had failed to submit sufficient proof in opposition to the motion for summary judgment to avoid dismissal. This Court stated the test for measuring the sufficiency of the record to overcome the motion for summary judgment as,

> "Summary judgment is proper if the evidence before the court on the motion would warrant a directed verdict if the case were to go to trial. When the moving party presents materials which would entitle him to a directed verdict if presented at trial, the responding party may not hold back his evidence; he must present sufficient materials to establish a triable issue. Those materials must set forth the facts with particularity; for if general averments were sufficient the summary judgment procedure would lose its utility. The requirement of specificity is underscored in cases where the moving defendant has established, prima facie, a defense grounded on the statute of limitations."[6]

Johnson bore the burden of proof of establishing that his action was not barred by I.C. § 5–219.

The majority concludes that the discovery exception to the statute of limitations announced in Renner v. Edwards[7] is applicable and remands the action to the district court. The record fails to set forth sufficient information to place Johnson within the Renner discovery rule.

In the Renner case, the discovery rule in malpractice actions was extended to circumstances involving misdiagnosis resulting in erroneous surgery. The patient in that case engaged the services of a doctor who negligently diagnosed her condition and thereafter performed an unnecessary colostomy. After the surgery the patient suffered continuous pain and inability to control her bodily functions. The patient sought relief from several doctors and it was not until some three years after the surgery was it discovered that the surgery was unnecessary. It was held that the statute of limitations did not begin to run until the unnecessary surgery was discovered, or should have been discovered.

In order for Johnson to overcome the motion for summary judgment he must produce sufficient "specific" evidence showing that the discovery rule is applicable to his action. For the discovery rule to apply the following elements must be shown:

(1) Negligence or malpractice by the doctor;

(2) Ignorance of the malpractice by the patient.

Johnson's purpose in going to Dr. Brunt was to have him examine two lumps that had formed on his back. Although it is not clear, it appears from the record that the two lumps were not located at the place where the drains were left in Johnson's back. The lumps were removed by Dr. Brunt and the drains were not in the lumps.

The majority states that "Johnson allegedly told Dr. Brunt that the drains installed by Dr. Stoddard had disappeared"

3. Schaefer v. Elswood Trailer Sales, *supra*, note 1.

4. Amended 1971.

5. 94 Idaho 595, 495 P.2d 1 (1972).

6. Johnson v. Gorton, *supra*, note 5, at 598, 495 P.2d at 4.

7. 93 Idaho 836, 475 P.2d 530 (1970).

which would appear to add to the evidence that it was malpractice not to find the drains. Dr. Brunt stated in his answer to Johnson's interrogatories that,

"I had no discussion with him as to Penrose drainage tubes. The name Penrose was never mentioned. At a time when I was removing sutures from the patient at the conclusion of my treatment, he mentioned that he had some prior trouble with drains, but did not elaborate on it." [8]

Furthermore, in Johnson's deposition he stated,

Q I believe you did advise Doctor Brunt, at least you have so stated earlier, that you did advise Doctor Brunt of the occurrence where the drains had been either lost or fallen or something the year before?

"A Yes.

"Q And you discussed this with Doctor Brunt?

"A Not to any extent as far as I remember. I just told him that there was two missing, lost or something."[9]

It appears that Dr. Brunt was not sufficiently informed of the missing drains in a meaningful manner to charge him with notice thereof and negligence in failing to find and remove them.

There was no evidence in the form of testimony presented by Johnson that the conduct of Dr. Brunt constituted malpractice in treating Johnson for the two lumps and not finding the drains.

"The general rule is that a practitioner of one of the healing arts, while remaining within the scope of his field of practice, is entitled to have the standard of treatment he gave a patient tested by the rules and principles of the school of medicine to which he belongs, and not by those of some other school." [10]

The standard of care for physicians has been fixed by this Court as,

"[T]he exercise of the care and skill ordinarily exercised by competent physicians and surgeons in the same or like locality, in the light of present day learning and scientific knowledge of, and professional advancement in the subject."[11]

Without a supporting record there is no basis for concluding Dr. Brunt acted negligently in his treatment of Johnson. To overcome the motion for summary judgment, Johnson was required to come forward with evidence as to why he was unable to discover Dr. Brunt's alleged negligence within two years.

There was insufficient record established by Johnson to overcome Dr. Brunt's motion for summary judgment. The district court's dismissal of the action should be affirmed.

---

8. Clerk's transcript, pp. 38–39.

9. Johnson's deposition, clerk's transcript, p. 49.

10. Flowerdew v. Warner, 90 Idaho 164, 169, 409 P.2d 110, 113 (1965).

11. Flock v. Palumbo, 63 Idaho 220, 230, 118 P.2d 707, 711 (1941); see also W. Prosser, The Law of Torts, 164–165 (4th ed. 1971).