## WAY *v.* CUTTING.

It is a sufficient answer to a plea of the statute of limitations, that the defendant so fraudulently concealed from the plaintiff the cause of action that the same did not become known to him till within six years next before the commencement of his action.

The fraud by which such concealment is accomplished need not be other than that which constitutes the cause of action, if it actually have the effect of so concealing the cause of action from the plaintiff.

Fraud will in such cases prevent the bar of the statute, although the plaintiff possessed the means of detecting it if his attention had been directed to the subject.

CASE. The declaration alleged that the defendant and one Cutting, since deceased, were, on the 19th day of September, 1838, owners of a certain farm, and that the plaintiff treated with them for the purchase of it; that the defendant fraudulently, and with the intent to deceive the plaintiff with regard to the value of the farm, and to induce him to pay for the same a larger sum than he would otherwise have paid, and more than it was in fact worth, falsely represented to him that the farm had been valued and appraised by Edward Wyman, Josiah Stevens, and Isaac Griffin, at four thousand one hundred and fifty dollars; that such representation was false, and that the defendant knew it to be so when he made it; that, by reason of such false representation, the plaintiff was induced to purchase the farm, and to pay for it the sum of four thousand one hundred and fifty dollars, which was one thousand dollars more than its value.

The second count alleged that the conveyance, which was made by the defendant and Cutting, embraced less than the farm so appraised, but that the defendant falsely, and with the intent before described, represented that the part conveyed was all that was embraced in the appraisal, and so induced the plaintiff to conclude the purchase; whereas, in fact, the farm, as appraised and valued by

Way v. Cutting.

Wyman, Stevens and Griffin, comprised an additional parcel, of the value of one thousand dollars.

The defendant pleaded the general issue, which was joined, and that the supposed cause of action did not accrue at any time within six years.

To the special plea, the plaintiff replied that the " defendant so artfully concealed from the plaintiff the said frauds in the plaintiff's declaration complained of, that he, the said plaintiff, had no knowledge thereof, nor was the same by any means disclosed or discovered to him, until within six years next before the commencement of his action."

The defendant rejoined, traversing the averment and tendering an issue, which was joined.

On the trial, it appeared that in the fall of 1838 the defendant had sold to the plaintiff a farm, situated in Newport, for the sum of four thousand, one hundred and fifty dollars; and the plaintiff introduced evidence to show that the bargain was made at Wendell; that at the time it was made the defendant told the plaintiff that the farm had been appraised by Edward Wyman, Josiah Stevens, and Isaac Griffin, citizens of said Newport, for $4,150; and that the plaintiff was induced to buy the farm in consequence of said representation. It further appeared that one of the witnesses who testified to the bargain, had been with the plaintiff upon the premises before the bargain was made, and had made some examination of the same, and that the deed was made out the next forenoon, at Newport. It also appeared that at the time of the bargain the defendant represented that he was very busy attending to his affairs at Wendell, and that if the trade was to be made, it must be closed up without delay. The plaintiff also introduced evidence tending to show that said representation, in regard to the appraisal of said farm, was false and fraudulent; that another piece of land, of the value of $250, was included in said appraisal.

Way v. Cutting.

The plaintiff also introduced a witness, who swore that in March, 1841, he told the plaintiff that there had been a misrepresentation in regard to the appraisal of the farm; that it was appraised for $250 less than what the defendant told him it was at the time of the sale, and that the plaintiff appeared surprised at the information. It further appeared that the plaintiff commenced an action of some kind, some time after March, 1841, for the recovery of said $250, and that the suit failed without trying the merits of the case.

The plaintiff here rested his case, and the defendant moved for a nonsuit—First: Because it appeared from the evidence that the names of the appraisers were disclosed by the defendant, and he thereby had the means of ascertaining whether the representation in regard to the appraisal was true or not; that sufficient was disclosed to put him upon his guard, and that he had the same means of ascertaining the truth of the representation, at the time of the contract and conveyance, as he had afterwards. Second: Because the evidence was not competent nor sufficient to show such a concealment of the fraud, if any, as to take the case out of the statute of limitations.

The court overruled the motion, to which ruling the defendant's counsel excepted.

The defendant then introduced evidence tending to show that no representation that the farm had been appraised for $4,150 was made at the time of the bargain, nor at any other time.

The court charged the jury that if they found that the purchase was made in consequence of the false and fraudulent representations of the defendant, in regard to the appraisal of the property, and that the fraud was so concealed that the plaintiff did not know it till March, 1841, their verdict should be for the plaintiff, otherwise for the defendant. " The defendant's counsel then requested the court to charge the jury that the concealment of the fraud

must have been made by some act of the defendant, beside the misrepresentation, if any, at the sale, in order to take the case out of the statute of limitations; also, to charge the jury that if the defendant gave the plaintiff the means of ascertaining the truth or falsity of the representations, at the time the contract was made, or if the plaintiff had the same means of discovering the truth or falsity at the time of the contract, or more than six years before the commencement of the suit, that he had afterward, the case would then come within the statute of limitations." But the court declined so to charge the jury.

The jury returned a verdict for the plaintiff, and the defendant moved to set the same aside, and for a new trial, for supposed error in the foregoing rulings and decisions of the court.

And it was ordered, that the questions arising upon said motion be reserved and assigned to the Superior Court, for their determination.

*Cushing*, for the plaintiff.

*Metcalf* and *Leland*, for the defendant.

GILCHRIST, C. J. The several exceptions taken in the court below, and reported in this case, appear to resolve themselves into one question.

The general principle of natural justice and of positive law that precludes a party from deriving a benefit from his own wrong, has from an early period been applied by courts, both of law and of equity, to the construction of the statutes of limitation. It has accordingly been repeatedly held that a party shall not be protected by the lapse of time during which he has, by his own fraud, prevented the party whom he has injured from asserting his rights at law; and that he against whom the statute bar is interposed may avoid it by showing that he has been kept in

Way v. Cutting.

ignorance of his claim till within the period limited by law for bringing his suit, by the fraudulent practices of the party setting up the defence.

The case of *South Sea Company* v. *Wymondsell*, 3 P. W. 143, was a bill for relief against frauds in a contract between the defendant and the plaintiff's cashier. The statute of limitations was pleaded, and it was decided that the plaintiffs might amend their bill by charging that the fraud was discovered within six years. The case of Lord *Warrington* was cited, in which precisely the same course was pursued to avoid the plea of the statute of limitations. These were cases in equity, where, instead of special replications to meet the defence set up, the practice of the court is to give leave to charge the matter of avoidance by way of amendment to the bill.

In the case of *Bree* v. *Holbeck*, Doug. 656, the precise point did not arise, but the *dictum* and the reasoning of Lord *Mansfield* have since that time been generally adopted, and the case may be considered a leading one upon the doctrine in question. The replication alleged that the defendant, holding a paper purporting to be a mortgage to his intestate, sold it to the plaintiff as and for a good and genuine mortgage; whereas, in truth, it was a forgery, and the fact was not discovered by the plaintiff till within six years. The replication was held bad upon demurrer, because it alleged no fraud on the part of the defendant. His lordship said: "There may be cases which fraud will take out of the statute of limitations. But here every thing alleged in the replication may be true, without any fraud on the part of the defendant. He finds a mortgage among the papers of his intestate, and parts with it *bonâ fide* as a marketable commodity. If he had discovered the forgery and then got rid of the deed as a true security, the case would have been very different."

*The First Mass. Turnpike Corporation* v. *Field*, 3 Mass. 201, was assumpsit upon a contract of the defendants to

perform certain work for the plaintiffs, which was not done in the manner agreed. To a plea of the statute of limitations, the plaintiffs replied, that the defendants so executed the work that the contract appeared to be completed; and they falsely affirmed that it was completed, but that in fact the work was not done according to contract, and the fraud was not discovered till within six years next before the commencement of the action. Upon demurrer, the replications were held good, and the general principle affirmed that where the cause of action, though it have actually accrued, has, through the fraud of the defendant, been kept from the plaintiff's knowledge, the statute does not begin to run till after the existence of the injury and claim have been made known to him.

These cases seem to be sufficient without adverting to many others which have been decided, to illustrate the general principle. No one of them appears to suggest the notion that the fraud by which the cause of action is concealed from the plaintiff need be other than that which caused or attended the original injury itself, in order to retard or prevent the operation of the statute. All that was said in the case in Peere Williams was, that the plaintiffs might amend their bill so as to charge that the fraud was first discovered to them within six years next before the commencement of their suit. There, fraud in the contract was the gravamen, and no other was pretended to have been made use of by the defendant except mere silence and inaction, by which the original fraud was kept on foot. The false averment by which the party was surprised had vigor enough to prevent for a time the detection of the wrong. The court evidently proceeded upon the ground that nothing more was needed to retard the operation of the statute, as a bar to the action, than the defendant's persistence in the secrecy by which the original fraud was continually refreshed.

Such is the present case. The deceit by which the

Way v. Cutting.

plaintiff was at first wronged, sufficed, through the silence and secrecy of its author, to keep him for a time in ignorance of the wrong. His cause of action was, therefore, most obviously concealed from him by the act of the defendant, having its beginning in the false representation by which he was induced to enter into the bargain, and continued and kept alive by the secrecy which followed. We are, therefore, of the opinion that the position assumed by the defendant, that some new act of fraud and concealment, beside the representation made at the sale, must be proved upon him in order to deprive him of the protection of the statute, is not supported by authority or sound reason.

Neither is he relieved by the fact that the plaintiff possessed the means of testing the truth of the representations which were made, and of detecting the fraud by which he had been deluded. Fraud is sometimes protected by its very boldness, and gains credit by the freedom with which it intrusts its victim with the means of detection.

It seems to us that the right which the buyer has to rely upon the representations of the seller, as to the property which is the subject of negotiation, would be of but little value, if the latter were bound to tell the truth only in those cases in which the other party has no means of detecting the falsehood. And the true question is, whether the seller has in fact deceived the buyer by false representations, and not whether the latter might, by the exercise of any amount of diligence, under the promptings of a strong suspicion, have avoided the snare that was laid for him.

In the case of *Farnam* v. *Brooks*, 9 Pick. 212, cited by the defendant in argument, there was no pretence that the defendant had deceived or endeavored to deceive the plaintiff or the intestate by any false representations, or by willfully withholding material information.

The first question was, whether he had so fully under-stood and discharged his duty, as a trustee or an agent dealing with his principal, as to disclose all that he was legally bound to disclose respecting the property he was purchasing of his principal. The other question was, whether, upon the assumption that he had erred in this particular, the fraud which the law in such cases imputes to him is such as prevents the operation of the statute of limitations. In maintaining the negative of this question the learned judge used expressions which, taken in con-nection with the facts of the case, can scarcely mislead any one, but which were not intended as general proposi-tions.

When the judge intimated, in that case, that the means of detecting the fraud was the same thing as the actual knowledge of it, he must have intended *such* means as the parties in that case had possessed—where all the sources of information which the defendant possessed had been submitted, and examined in fact by competent persons, to the satisfaction of all concerned. In short, the "means of knowledge," intended by the judge, are the same means possessed by the party charged with the fraud—means which place the two parties upon equal ground, which is not the case where the seller has quieted the vigilance of the buyer by false assertions, and diverted his attention from inquiries upon which he might otherwise have been put.

We are, therefore, of the opinion that the exceptions cannot prevail, and that there should be

*Judgment on the verdict.*