**PREMIUM MANAGEMENT, INC.,**
**Plaintiff, Appellee,**

v.

**Robert WALKER, Defendant, Appellant,**

v.

**David M. EMERY et al., Third Party**
**Defendants, Appellees.**

**No. 80-1599.**

United States Court of Appeals,
First Circuit.

Argued Feb. 12, 1981.

Decided May 13, 1981.

John R. Bryden, Andover, Mass., with whom Charles F. Dalton, Jr., and Dalton, Dalton & Bryden, Andover, Mass., were on brief, for defendant, appellant.

Steven J. McAuliffe, Concord, N. H., with whom Gallagher, Callahan & Gartrell Professional Association, Concord, N. H., was on brief, for third party defendant, appellee National Life Insurance Company of Vermont.

* Of the District of Massachusetts, sitting by designation.

Before COFFIN, Chief Judge, BREYER, Circuit Judge, WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge.

Premium Management, Inc. (Premium), a Georgia corporation, brought in the district court a diversity action against Robert Walker, a citizen of New Hampshire, to recover on promissory notes made by Walker to pay premiums on insurance policies issued to Walker by Premium's assignor, National Life Insurance Company of Vermont. On October 19, 1979 Walker filed a third party complaint against David M. Emery (the insurance salesman who in 1970 sold him the National Life policies), Howard K. Holladay (Emery's employer) and National Life. Walker alleged fraud, negligent representation, and breach of contract. Walker's claim is that at a time when Walker owned insurance policies issued by State Mutual Life Insurance Company, Emery, as Holladay's employee and National Life's salesman, induced Walker to terminate his State Mutual policies and to purchase National Life policies by falsely representing that the new policies would provide additional benefits and values beyond those furnished by the terminated policies.

On February 19, 1980 Emery, as defendant in the third party action, filed a motion for summary judgment on the ground that all of his alleged conduct and acts occurred over six years before the third party complaint was filed and so were barred by New Hampshire R.S.A. 508:4 (1977) which so far as pertinent provides:

*Personal Actions.* Except as otherwise provided by law all personal actions may be brought within six years after the cause of action accrued, and not afterwards.

The motion was accompanied by Emery's February 4, 1980 affidavit that all of his alleged conduct and acts occurred, if at all, before October 19, 1973, and, indeed, before July 1, 1973.

On February 29, 1980, the appellant Walker filed an ambiguous counter-affidavit.[1]

On April 21, 1980 the district court ordered that Walker should file a detailed affidavit reciting "all contacts he had with ... Emery ... and what transpired during the course of such contacts," and that Walker's expert should also file an affidavit.

On May 16, 1980 Walker filed his affidavit reciting that when he purchased the National Life policies and cashed in the State Mutual policies he relied upon Emery as "an expert, professional estate and insurance planner" and that Emery had "assured me [him] that this change in policy [from State Mutual to National Life] would improve, strengthen and add increased value to my estate and in fact would be a better plan than I already had in existence." Nowhere does Walker unambiguously allege what representations, if any, Emery made as to specific characteristics of the National Life policies or the State Mutual policies. However, he avers that:

> During this period [1974–1975] I became greatly concerned over the amount of the loan I was required to pay to Premium Management to keep my insurance in effect. These loans were far in excess of those which Mr. Emery represented to me would be owed. Following June 1, 1977 I consulted with an estate planning insurance expert who reviewed the State Mutual policies and the National Life policies which I had purchased. It was his opinion that I had lost approximately $113,000 in my total estate plan by having purchased the National Life policies. Until that point in time I had no way of knowing what had happened. The expert which I consulted analyzed the policies and did a written analysis with respect to his findings. If I had known the actual facts concerning this situation I would never have purchased the policies from Mr. Emery and certainly would not have cashed in my State Mutual policies. To this day I would not have been aware of this problem had not the expert I retained reviewed my estate following June 1, 1977.

The district judge had before him, in addition to the affidavits of Emery, Walker, and Morgan, the so-called expert, Premium Management, Inc.'s interrogatories, attaching Exhibits A to N, and appellant's answers. Each exhibit was a printed form combining a note and an assignment of an insurance policy as collateral. Each note was payable to Premium in return for a loan to enable the appellant to pay his premium on one of the National Life policies which as agent Emery had sold the appellant when he cashed a corresponding State Mutual policy; and each note was secured by an assignment of that policy as collateral. Walker admitted that he had signed the notes and assignments, but he indicated that at least in some instances the dates, amounts, and policy numbers were later inserted by Emery. The first note was dated May 28, 1970.

On July 17, 1980 the district court granted Emery's motion for summary judgment on the ground that the appellant's third party complaint was barred by the New Hampshire statute of limitations, R.S.A. 508:4 (1977). Thereafter, Holladay and National Life filed similar motions for summary judgment which the district court granted on August 29, 1980.

Walker appeals from the three summary judgments on the ground that the statute of limitations did not begin to run until he discovered in June 1977 that Emery's alleged representations were false.

■ The third party complaint having been filed in an action brought on the basis of diversity jurisdiction in the United States District Court for New Hampshire, the federal courts must apply the New Hampshire rules as to choice of law. *Dindo v. Whitney*, 429 F.2d 25 (1st Cir. 1970).

1. Paragraph 4 of the affidavit avers that Emery committed acts of fraud which were "not apparent or known to the appellant ... until ... on or about June 15, 1977." Paragraph 8 avers "that the facts giving rise to the claims of" the appellant "were fraudulently concealed in fact by David M. Emery."

New Hampshire would apply its own substantive law to determine the rights and liabilities of the parties inasmuch as it was in New Hampshire that Emery made his allegedly false representations and the appellant received them and acted upon them. Restatement, Conflict of Laws, Second § 148.

The appellant contends that, as a matter of New Hampshire law, his cause of action for fraud did not accrue until he had discovered or should have discovered the falsity of Emery's representations, and that, as a matter of fact, the appellant did not discover the fraud until June 1977 and that there was no reason that he should have discovered the fraud earlier.

In New Hampshire as elsewhere [2] "the general rule [in tort actions] . . . dates the accrual of the cause of action from the time the damages occurred," *Roberts v. Richard & Sons, Inc.*, 113 N.H. 154, 153, 304 A.2d 364 (1973). . . . Ordinarily, "ignorance of the cause of action on the part of the plaintiff does not toll the statute of limitations." *Ibid.* Two exceptions have been recognized in New Hampshire: one relating to *concealment* of the plaintiff's cause of action is 132 years old, *Way v. Cutting*, 20 N.H. 187 (1849), *Quimby v. Blackey*, 63 N.H. 77, 78 (1884); *Hamlin v. Oliver*, 77 N.H. 523, 524, 93 A. 966 (1915); see *Lakeman v. LaFrance*, 102 N.H. 300, 303, 156 A.2d 123 (1959); *Shillady v. Elliot Community Hospital*, 114 N.H. 321, 323, 320 A.2d 637 (1974); the other relating to *late discovery* was first declared only seven years ago in a medical malpractice suit, *Shillady v. Elliot Community Hospital*, 114 N.H. 321, 320 A.2d 637 (1974), but was more fully explained in a products liability case, *Raymond v. Eli Lilly & Co.*, 117 N.H. 164,

371 A.2d 170 (1977), and has since been applied, *inter alia*, in a case involving malpractice by a lawyer, *McKee v. Riordan*, 116 N.H. 729, 366 A.2d 472 (1976). Both exceptions reflect "similar reasons of fairness and equity." *Shillady v. Elliot Community Hospital*, supra, 114 N.H. p. 323, 320 A.2d 637.

The fraudulent concealment exception, as most recently explained by the New Hampshire court in a 1974 dictum in the *Shillady* case, supra, p. 323, 320 A.2d 637 provides that "if a plaintiff's lack of knowledge of . . . a violation of her rights and of her resulting cause of action is due to fraudulent concealment by the one against whom it lies, the commencement of the running of the statute of limitations will be postponed *'until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action.'* *Lakeman v. LaFrance*, 102 N.H. 300, 303, 156 A.2d 123, 126 (1959)." (Emphasis added.)

The late discovery exception as formulated in *Raymond v. Eli Lilly & Co.*, supra, 117 N.H. p. 171, 371 A.2d 170 and amended in *Brown v. Mary Hitchcock Memorial Hospital*, 117 N.H. 739, 743, 378 A.2d 1138 (1977) by inserting the word "wrongful," reads as follows:

> A cause of action will not accrue under the discovery rule until the plaintiff discovers or *in the exercise of reasonable diligence should have discovered* not only that he has been injured but also that his injury may have been caused by the defendant's wrongful conduct. (Emphasis added.)

We need not decide whether either of the two exceptions applies to a claim of fraud [2a] where it is not alleged that the defendant concealed [3] an objective fact [4] and where, at

---

**2.** Cf. Restatement, Torts, Second § 899, comment c, p. 441. "A tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff. Thus when one makes a fraudulent representation to another, the tort is not complete until the other acts upon it to his detriment."

**2a.** The third party complaint also alleges a claim of negligence. But there is no competent evidence of Emery's lack of due care—the prof-

fered affidavit of Morgan being, as the district court found, from a person whose qualifications were not shown.

**3.** Emery did not conceal or misrepresent the facts upon which he based his opinion as to the comparative merits of State Mutual and National Life policies. Those objective facts were fully disclosed in the State Mutual policies which appellant possessed when Emery made his representations and in the National Life

most, it could be claimed that the defendant failed to reveal [5] that he in expressing an opinion based on disclosed facts was not in good faith.

Even if one or both of the exceptions does apply to a misrepresentation of the defendant's opinion as to facts fully disclosed to the plaintiff, the exceptions do not avail this appellant because, as we shall now explain, more than six years before he brought his action he should have known the pecuniary loss he allegedly suffered when he cancelled his State Mutual policies.

The appellant's pleading and affidavits set forth a broad allegation that Emery falsely represented that the National Life policies offered the appellant greater benefits and values than did the State Mutual policies. However, that broad allegation is buttressed by affidavits which make reference to only one specific respect in which the representation is directly or indirectly claimed to have been false or to have injured the appellant. The specific misrepresentation which is said to have injured the appellant is thus stated in the appellant's May 16, 1980 affidavit:

> During this period [1974–1975] I became greatly concerned over the amount of the loan I was required to pay to Premium Management to keep my insurance in effect. These loans were far in excess of those which Mr. Emery *represented* to me would be owed. (Emphasis added.)

In no other respect is it anywhere claimed that Emery's representation was false or injured the appellant.

The statement of the specific misrepresentation is woefully inadequate. There is no averment that Emery misrepresented *how much* would be the appellant's loan indebtedness were he to subscribe to National Life policies. Plainly a truthful averment of such a fact would have been literally impossible. A future loan indebtedness would necessarily depend on what in future years the appellant himself would borrow and what would be the then interest rate charged by the lender. Neither the appellant nor Emery could in 1970 have known those future matters. Nor is it averred or implied that either of the parties made as those matters estimates or assumptions— much less guarantees or promises.

policies which he was given then or immediately thereafter. The only so-called "fact" which it could be argued that Emery "concealed" was his alleged want of good faith in making the representation.

4. All the New Hampshire fraudulent concealment cases known to us are based on fraudulent concealment of *facts*. And *Lakeman v. LaFrance*, 102 N.H. 300, 303, 156 A.2d 123 (1959) has a dictum that a cause of action based upon "a fraudulent concealment of *facts*" (emphasis added) does not begin to run "until such time as the injured person has discovered them or could have done so in the exercise of reasonable diligence, at which time the *statutory period of limitation will start to run.*"

5. Compare the Massachusetts rule requiring positive acts to make *its* fraudulent concealment rule applicable. "Ordinarily mere silence is not a fraudulent concealment . . . there must be something in the nature of positive acts with intent to deceive." *Stetson v. French*, 321 Mass. 195, 72 N.E.2d 410 (1947); *Lynch v. Signal Finance Co.*, 367 Mass. 503, 507, 327 N.E.2d 732 (1975); *Burns v. Massachusetts Institute of Technology*, 394 F.2d 416, 419 (1st Cir. 1968). See to the same effect cases from other jurisdictions collected in *Peck v. United States*, 470 F.Supp. 1003, 1019 (S.D.N.Y.1979).

The Massachusetts rule has not been considered in any New Hampshire case. However, in 1849 in *Way v. Cutting, supra*, p. 190, the court stated that it was the purpose of the fraudulent concealment doctrine that "a party shall not be protected by the lapse of time during which he has, by his own fraud, *prevented* the party whom he has injured from asserting his rights at law." (Emphasis added.) Yet New Hampshire may be moving away from *Way v. Cutting* toward a broader view of the purposes of the fraudulent concealment doctrine, in order to treat the doctrine as a branch of the "discovery doctrine" hereinafter considered. In 1974 in *Shillady v. Elliot Community Hospital, supra*, 114 N.H. p. 323, 320 A.2d 637, the court stated that the fraudulent concealment doctrine "is based on the unfairness which would result to a plaintiff blamelessly ignorant of her injury whose action would be cut off before she was aware of its existence. W. Prosser, Law of Torts § 30, at 144 (4th ed. 1971); Comment, 17 Vand.L.Rev. 1577, 1579 (1964); Annot., 80 A.L.R.2d 368, § III (1961)."

So the most we can squeeze out of the appellant's affidavit or other evidence presented on the motion for summary judgment is that appellant avers that he has been injured by Emery's allegedly false representation that the National Life policies' *loan provisions* offered to the appellant benefits not available under the State Mutual policies. In no other respect is there any evidence whatsoever that the National Life policies did not live up to the alleged representations by Emery or cause injury to the appellant.

■ Even if Emery did make such a representation and it was false, the appellant had he acted with reasonable diligence should have discovered the falsity when on May 28, 1970 he borrowed money to pay his National Life premium by executing a note to Premium secured by a National Life policy. It is of no consequence that the amount payable and other figures were not filled in when the appellant executed the note. Had he exercised reasonable diligence, the appellant would immediately have sought the information from Premium or National Life. It is not averred that Emery fraudulently prevented him from securing that information; the appellant was just idle or indifferent rather than diligent. Thus we rule [6] that within a few days of May 28, 1970—no later than June 15, 1970—the appellant by the exercise of reasonable diligence should have discovered that he had a cause of action against the appellees for Emery's alleged blameworthy conduct.

■ The postponement of the accrual of a cause of action and thus of the running of the statute of limitations under either the fraudulent concealment rule (*Lakeman v. LaFrance, supra*) or the late discovery rule (*Shillady v. Elliot Community Hospital, Raymond v. Eli Lilly & Co.*, both *supra; Brown v. Mary Hitchcock Memorial Hospital*, 117 N.H. 739, 743, 378 A.2d 1138 (1977)) never lasts beyond the time when the plaintiff "in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's wrongful conduct." *Brown v. Mary Hitchcock Memorial Hospital, supra.*[7] Thus to be timely the appellant should have filed his third party complaint within six years after June 15, 1970, that is, before June 15, 1976. He did not file the complaint until October 19, 1979, and so the action is barred.

*Affirmed.*

---

**6.** Our ruling as to what constitutes "reasonable diligence" "falls in the borderland between fact and law." *Raymond v. Eli Lilly & Co.*, 556 F.2d 628, 629 (1st Cir. 1977). It is not inconsistent with any finding by the district court, does not involve an issue of credibility, and is an ultimate conclusion based on undisputed facts.

**7.** The word "wrongful" as used in *Brown v. Mary Hitchcock Memorial Hospital, supra* implies that under New Hampshire law a cause of action does not accrue until the plaintiff has discovered or should have discovered that the defendant's conduct was "blameworthy." This seems to accord with Restatement, Torts, Second (1979) § 899 comment (e), especially at p. 445. But the federal rule, at least in cases involving the United States, is different. *United States v. Kubrick*, 444 U.S. 111, 121–124, 100 S.Ct. 352, 359–360, 62 L.Ed.2d 259 (1979) held that a cause of action alleging that the plaintiff sustained personal (that is, bodily) injuries due to the failure of the United States as defendant to exercise due care accrued when the plaintiff knew or should have known that he had sustained a physical injury and that it was caused by the defendant, even if the plaintiff did not know that the defendant was "negligent," that is, blameworthy. *Non constat* whether the New Hampshire or the federal rule with respect to ordinary personal injuries applies in New Hampshire or in a non-diversity federal case when the defendant is sued for fraudulent conduct, breach of contract, malpractice involving non-medical professionals or conduct involving financial transactions. We have avoided deciding the issue by stating that postponement never lasts beyond the time when the plaintiff has discovered that his injury has been caused by defendant's wrongful conduct.