Argued January 7, reversed and remanded April 2, 1969

FROHS, *Appellant, v.* GREENE ET AL,
*Respondents.*

452 P2d 564

*Roger Tilbury,* Portland, argued the cause and filed briefs for appellant.

*Phillip D. Chadsey,* Portland, argued the cause for respondents. With him on the brief were George H. Fraser, Cleveland C. Cory, Robert H. Hollister and David C. Landis, Portland.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and MENGLER,[*] Justices.

HOLMAN, J.

This is a negligence action for claimed malpractice by defendants doctors and hospital. Plaintiff appealed from a judgment dismissing her action after the trial court had sustained demurrers to her fourth amended complaint. The demurrers were based upon the statute of limitations.[①]

Plaintiff filed her complaint on May 10, 1967, alleging that in 1951 defendants negligently gave her injections of penicillin when they knew or should have known that plaintiff was allergic to penicillin. She also alleged that defendants were negligent in failing to take certain treatment to counter the injections.

Plaintiff contends that the statute of limitations did not begin to run until plaintiff discovered or in the exercise of reasonable care should have discovered that she had been tortiously injured by defendants. Defendants contend that the application of the

---

[*] Mengler, J., did not participate in this decision.
[①] ORS 12.010 and 12.110(1).

discovery rule in medical malpractice cases should be limited to cases where foreign objects are negligently left in patients' bodies at the completion of operations. This court adopted the discovery rule in foreign object cases in *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966). The question is whether the holding of that case should be extended to cases of negligent diagnosis or treatment.

Defendants argue that such an extension of the rule would open great opportunities for fraudulent claims and would subject physicians to an intolerable burden of defending stale claims at a time when any practical opportunity for an actual recollection of the facts and circumstances had elapsed. Defendants point out that the existence of a foreign object in the body is an intrinsic attestation to the reliability of the proof of a negligent act and its relationship to the injury. This reliability, they claim, is not present in claims for negligent treatment or diagnosis. Cases which have refused to extend the discovery doctrine to negligent treatment and diagnosis are: *Rothman v. Silber,* 90 NJS 22, 216 A2d 18 (1966); see *Morgan v. Grace Hospital,* 149 W Va 783, 144 SE2d 156 (1965) as interpreted by *Hundley v. Martinez,* 151 W Va 977, 158 SE2d 159, 166 (1967); also see *Owens v. White,* 380 F2d 310 (9th Cir 1967).

This court in the case of *Wilder v. Haworth,* 187 Or 688, 213 P2d 797 (1950), refused to apply the discovery rule in a case of negligent diagnosis and treatment. However, this was prior to adoption of the discovery rule in foreign object cases by *Berry v. Branner, supra,* which overruled the prior case of *Vaughn v. Langmack,* 236 Or 542, 390 P2d 142 (1964).

On a theoretical basis it is impossible to justify

the applicability of the discovery rule to one kind of malpractice and not to another. The reason for the application of the discovery rule is the same in each instance. It is manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists. This is true whether the malpractice consists of leaving a foreign object in the body or whether it consists of faulty diagnosis or treatment. The following language used in *Berry v. Branner, supra,* at page 312, when construing the Oregon statute, is equally applicable to all kinds of malpractice:

> "* * * To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, 'You had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy,' makes a mockery of the law * * *."

We do not believe that the danger of spurious claims is so great as to necessitate the infliction of injustice on persons having legitimate claims which were undiscoverable by the exercise of ordinary care prior to the lapse of two years from the time of the act inflicting the injury. Nor do we believe the legislature intended such a result.[2] We therefore overrule our former decision in *Wilder v. Haworth, supra,* and any similar decisions. Cases in harmony with our present holding are: *Yoshizaki v. Hilo Hospital,* 433 P2d 220

---

[2] Subsequent to the filing of this case, Oregon Laws 1967, ch 406, p 823, amending ORS 12.110 became effective. We do not presume to decide the effect this amendment might have on a similar case filed now.

(Hawaii S Ct 1967); *Wilkinson v. Harrington,* — R I —, 243 A2d 745 (1968); *Hungerford v. United States,* 307 F2d 99 (9th Cir 1962).

The allegations of plaintiff's complaint are as follows:

"Within a short time after such injections, plaintiff experienced severe pains, but was assured by defendants that any possible problems connected with the injection of penicillin had been counteracted and would give rise to no further difficulty. Such symptoms were complex and plaintiff was required and did seek further treatment from defendants, as well as other physicians and medical personnel in an effort to find alternative explanations for her illnesses. Defendant doctors, when consulted by plaintiff, still continued to assure her that the penicillin injections given her in 1951 were in no way causing her difficulties. The other doctors and medical personnel with whom plaintiff consulted, and who are not defendants, did not participate in the 1951 procedures (and for this reason did not have the benefit of the first hand information available to defendants) were not able to determine the cause of her difficulties. Plaintiff diligently and continuously sought to determine the alternative cause of her physical difficulties. It was not until May 11, 1965, when surgery was performed, and an artery was removed from within plaintiff's temple, that it was first shown that her problems were attributable to defendants' negligent treatment in 1951. Such representations by defendants were material and plaintiff at all times relied thereon and had no reason to believe, and did not believe, the facts were otherwise until said surgery in 1965. Defendants' representations had the effect of preventing plaintiff from consulting other physicians to determine if the penicillin injections were causing her problems and were responsible for her inability to discover the true cause. Defendants either knew that such representations were untrue

or knew that they did not have sufficient informa-
tion with which to make such statements at the time
they were made. Many of the other doctors whom
plaintiff consulted were specialists in fields other
than those in which defendants practiced. Defend-
ants intended that plaintiff act upon such repre-
sentations in the manner in which she did. As a
result of such reliance, plaintiff sustained those in-
juries set forth in paragraph VII."

Plaintiff has alleged that she first discovered that
she was suffering from defendants' negligent treat-
ment on May 11, 1965. This action was begun on May
10, 1967, which was within two years of the alleged
discovery. Her action was, therefore, timely filed, pro-
vided that her allegations were sufficient to show that
in the exercise of reasonable diligence she should not
have discovered previously that defendants had com-
mitted a tort upon her body in 1951.

She alleged that shortly after the injections she
was assured by defendants that her physical difficul-
ties were not caused by the injections and that these
assurances were continued by defendants doctors dur-
ing her treatment by defendants. She also alleged that
the representations by defendants had the effect of
preventing her from consulting other doctors. She in-
dicates, however, that she did consult other doctors
and they were unable to determine the cause of her
difficulties until the operation of May 11, 1965. We
believe that the above allegations would normally be
sufficient to show that, in the exercise of reasonable
diligence, she should not have discovered that she had
a cause of action.

However, plaintiff also alleged that she was told
that possible problems connected with the injections
"had been counteracted" and would cause "no further
difficulties." The quoted language can only be con-

sistent with her possession of knowledge that she might have received some adverse effects from the injections. While the complaint is not a model of clarity, we construe it to say that plaintiff was told by defendants that the "severe pains" she experienced shortly after the injections were not attributable to them, and that possible problems which had been counteracted referred to other difficulties she must have experienced prior to the time she complained to the doctor of her severe pains. This raises the question whether the statute commenced to run when plaintiff became aware that the difficulty she had prior to the severe pains was attributable to the injections.

Normally, knowledge of injury as the result of defendants' actions would put the injured party on sufficient notice of defendants' tortious conduct to commence the running of the statute. However, immediate, adverse side effects commonly result from medical treatment given to gain long-range and more important benefits. Knowledge of momentary, adverse effects which are immediately controlled would not put plaintiff on notice as a matter of law of tortious conduct by defendants. It may be that, upon trial, the facts will indicate that she did have such notice. However, we do not believe that the allegations of the complaint are sufficient for the court to say that as a matter of law the statute has run.

■ We conclude that plaintiff has sufficiently alleged non-discovery of defendants' claimed malpractice as well as facts to show that in the exercise of reasonable diligence she should not have discovered such malpractice prior to the date of her operation.

The judgment of the trial court is reversed and the case is remanded for further proceedings.

PERRY, C. J., dissents.