Rockingham
No. 6826

NICHOLAS ZUK

v.

CLIFFORD S. HALE, AND
CLIFFORD S. HALE, TRUSTEE

December 31, 1974

*Perkins, Holland, Donovan & Beckett (Mr. William H.M. Beckett* orally) for the plaintiff.

*Reinhart & Eldredge (Mr. Arthur J. Reinhart* orally) for the defendant.

KENISON, C.J. Pursuant to RSA ch. 545, the Uniform Fraudulent Conveyances Act, plaintiff brought a bill in equity to set aside an allegedly fraudulent conveyance of real estate in Newmarket by defendant to himself as trustee. Trial before a Master (*Leonard C. Hardwick,* Esq.) resulted

814

in dismissal of the bill. Plaintiff's exceptions to the dismissal were reserved and transferred by *Perkins,* J. The question presented to us is whether the master's finding that there was not a fraudulent conveyance is supported by the record and by the law.

Plaintiff's claim against defendant for money owed arises from work which plaintiff performed as a plumbing subcontractor on a house which defendant constructed for a third party in Kingston during 1969 and 1970. In the course of completing his part of the job, plaintiff expended $6,200 but was paid only $1,000. Since he had not obtained further payment, plaintiff secured a summary judgment against defendant for $5,200 in Rockingham County Superior Court on September 21, 1971. Defendant subsequently paid $640.31 on the judgment, leaving an outstanding balance of $4,559.69.

Before construction of the Kingston house began, defendant transferred the Newmarket property to himself as trustee. On May 6, 1966, defendant had conveyed the same Newmarket property to his wife, and his wife was thereafter made the sole owner of the property by a decree of legal separation dated May 3, 1967. Because defendant's wife found that the financial burden of the property was too great, she wished to sell it. However, following defendant's advice not to sell, she reconveyed the property to defendant on May 29, 1969, with the explicit understanding that he would hold it as trustee and improve it so that it would produce rental income for her. On the same day, defendant executed both a quitclaim deed and a declaration of trust which were, in the words of the master, rather inartfully drawn documents. The deed of the property by defendant to himself as trustee provided that defendant would not make any claim or demand on the property. By the terms of the declaration of trust, defendant retained the power to sell the property and to revoke or amend the trust at any time.

Plaintiff contended that the conveyance of the property by defendant to himself as trustee was made while defendant was insolvent and left him with an unreasonably small amount of capital with which to operate his business. RSA 545:4, 5. Plaintiff maintained further that since defendant retained

power to modify and to revoke the trust, he should be compelled to exercise those powers to satisfy plaintiff's judgment. The master found, however, that the circumstances surrounding the execution of the trust indicated that the defendant did not acquire a beneficial interest in the property despite the language of the trust instrument itself. The master made alternative findings that even if defendant acquired an interest in the property, the conveyance was made while defendant was solvent and that after the conveyance, defendant retained a reasonable amount of capital for conducting his business. Plaintiff's exceptions to these findings must be considered in light of the rule that a master's determinations will not be overturned unless they are unsupported by the evidence or erroneous as a matter of law. *New England Tel. & Tel. v. Mitchell,* 114 N.H. 478, 480, 322 A.2d 613, 615 (1974); *Guy v. Hanley,* 111 N.H. 73, 76, 276 A.2d 1, 3 (1971).

Plaintiff argues that the master erred in finding that defendant was solvent at the time of the conveyance. RSA 545:4 provides that "every conveyance made . . . by a person who is . . . insolvent is fraudulent as to creditors, without regard to actual intent, if the conveyance is made . . . without fair consideration." RSA 545:2 I defines insolvency as when the "present fair salable value of (one's) assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and mature." *See Janson v. Schier,* 112 N.H. 329, 330, 296 A.2d 12, 14 (1972). An "existing debt" under RSA 545:2 has been interpreted to encompass an existing legal liability whether matured or unmatured. *Baker v. Geist,* 321 A.2d 634, 636 (Pa. 1974). Under RSA 545:4 insolvency must be determined as of the time of the alleged fraudulent conveyance. *First Nat'l Bank v. Hoffines,* 429 Pa. 109, 115, 239 A.2d 458, 462 (1968); V. Countryman, Cases and Materials on Debtor and Creditor 186 (1964).

Applying these principles to defendant's conveyance of the Newmarket property to himself as trustee, there is sufficient evidence to sustain the master's conclusion that it was not fraudulent within the meaning of RSA 545:4, even though no consideration was received for the conveyance. On May 29, 1969, the date of the quitclaim deed, defendant's

existing debts totaled between $8,000 and $9,000, consisting of a $3,000 bill outstanding to one creditor, plus $5,000 to $6,000 of monthly bills owing for materials purchased for remodeling and for construction. Although the master did not specify how he determined that defendant was solvent on May 29, the master could have found that in addition to working capital of $5,000 and a truck with a net worth of $1,000, defendant expected payment for work completed on current construction and remodeling jobs to offset monthly expenses for the purchase of materials. Assuming that defendant's expenses for materials would be covered by payments for work completed, defendant would have $3,000 of assets remaining after using his working capital and the proceeds of selling his truck to pay the outstanding bill of $3,000.

Plaintiff also argues that the master was wrong in not finding that the conveyance of the Newmarket property left defendant with an unreasonably small amount of capital. RSA 545:5 specifies that "every conveyance made without fair consideration, when the person making it is engaged . . . in a business . . . for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors . . . without regard to his actual intent." What is an unreasonably small capital depends on the nature of the enterprise in which one is engaged. Defendant testified that although he normally operated with between $7,000 and $13,000 working capital, he felt that $5,000 was adequate for the Kingston job since he was employing only two men in addition to himself. An architect with twenty-three years experience stated that in his opinion $5,000 was not sufficient capital for defendant to continue as a home builder. But on cross-examination he testified that assuming payments for work completed came in each month, $5,000 would be sufficient. Based on this testimony the master could have found that defendant's capital was not unreasonably small.

Finally, plaintiff maintains that the master erred in not holding that defendant's retention in the trust instrument of the powers to sell the property and to revoke or amend the trust at any time gave him personal ownership of the

property thereby rendering the trust invalid. A trust is invalid if the purpose of its creation is to defraud creditors. Restatement (Second) of Trusts § 63 (1) (1959); *Chandler v. United States,* 177 F. Supp. 565, 566 (D.N.H. 1969). While the deed and the declaration of trust were not "model forms of unimpeachable clarity" *(Geers v. Geers,* 95 N.H. 316, 317, 63 A.2d 244, 245 (1949)), they were not executed by defendant in order to elude his creditors. The quitclaim deed from defendant to himself as trustee which was dated the same day as the declaration of trust provided that defendant forfeited any personal claim to the property which he might have had. In addition, defendant testified that the purpose of the trust was to provide money for his wife and to give him managerial control of the property. This was further substantiated by his testimony that all rental income from the property is given to the bank; what remains after the mortgage payments are made, is used to pay the expenses of the property. Not only has defendant derived no income from the property, but he has been forced to use his social security payments to meet expenses which have not been covered by the rent.

Since we find that the master's report is legally correct and supported by the record, the order is

*Plaintiff's exceptions overruled.*

All concurred.