Rockingham
No. 7771

MARTHA PELOQUIN BROWN AND RICHARD BROWN

v.

MARY HITCHCOCK MEMORIAL HOSPITAL
HITCHCOCK CLINIC INC.
JOHN MILNE
ROBERT VANDERLINDE
RICHARD SOBEL

September 30, 1977

740

*Boynton, Waldron, Dill & Aeschliman,* of Portsmouth (*Mr. Nicholas R. Aeschliman* orally), for the plaintiffs.

*Sulloway, Hollis, Godfrey & Soden,* of Concord, and *Mr. Martin L. Gross* (*Mr. Gross* orally), for the defendants.

KENISON, C.J. On October 8, 1975, the plaintiffs filed actions in Rockingham County Superior Court to recover damages for personal injuries and loss of consortium arising out of allegedly negligent treatment received by the plaintiff Martha Brown in the years 1962, 1963, and 1968. During those years the defendant doctors administered the drug propylthiouracil (PTU) to Mrs. Brown as treatment for a hyperthyroid condition. The plaintiff sustained an adverse reaction to the drug which resulted in a drastic lowering of her white blood cell count. The plaintiffs allege that this reaction produced a permanent condition known as agranulocytosis, which severely reduces immunity to infections. They further allege that this agranulocytic state was not discoverable until October 18, 1973, at the earliest. The defendants raised the affirmative defense that the actions were barred by statutes of limitation. A hearing was held before a Master (*Mayland H. Morse, Jr.,* Esq.) to determine whether the plaintiffs' actions were time-barred.

The parties agreed that the actions against the three doctors are governed by the two-year statute of limitations for malpractice suits in effect in 1962 and 1968. The action against the hospital is governed by the six-year statute of limitations. RSA 508:4; *Blastos v. Elliot Community Hosp.*, 105 N.H. 391, 200 A.2d 854 (1964). After making findings of fact and conclusions of law, the master ruled that the action was time-barred. The Superior Court (*Perkins, J.*) approved the master's report and the plaintiffs seasonably excepted to the master's findings and conclusions. The issues raised by these exceptions were then reserved and transferred to this court. RSA 491:17.

■ The plaintiffs contend that the master employed an erroneous formulation of the New Hampshire discovery rule in determining the date on which the plaintiffs' cause of action accrued. Under the discovery rule a cause of action does not accrue "[u]ntil the plaintiff discovers or has a reasonable opportunity to discover that she has suffered a legal injury for which the defendant may be liable." *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 167, 371 A.2d 170, 172 (1977).

■ Before we consider the accuracy of the master's formulation and application of the rule, we must determine if an extension of the rule to cases such as the one before us is warranted. This court held that the discovery rule applies in so-called "foreign objects" cases in which a surgeon leaves an object inside a patient's body, *Shillady v. Elliot Community Hosp.*, 114 N.H. 321, 320 A.2d 637 (1974). Similarly, we have applied the rule to cases of attorney malpractice, *McKee v. Riordan*, 116 N.H. 729, 366 A.2d 472 (1976), and more recently to drug products liability cases. *Raymond v. Eli Lilly Co.*, 117 N.H. 164, 371 A.2d 170 (1977). A thorough discussion of the equitable considerations underlying the application of the discovery rule was undertaken in *Raymond*. We will not repeat that discussion here except to state that a similar weighing of the equities warrants the application of the discovery rule in this and similar medical malpractice cases. *Frohs v. Greene*, 253 Ore. 1, 4, 452 P.2d 564, 565 (1969). The danger that a physician or hospital will be exposed to unreasonable periods of liability or will be prejudiced by the loss of evidence due to the passage of time is substantially outweighed by the manifest unfairness of foreclosing an injured person's cause of action before he has had

even a reasonable opportunity to discover its existence. 117 N.H. at 170, 371 A.2d at 174 (1977); *Lipsey v. Michael Reese Hosp.,* 46 Ill. 2d 32, 262 N.E.2d 450 (1970); *Developments in the Law—Statute of Limitations,* 63 Harv. L. Rev. 1177, 1201 (1950).

■■ We now turn to the master's formulation and application of the discovery rule. The standard of review in appeals from a master's determinations is prescribed by case law. A master's determinations will not be overturned unless they are unsupported by the evidence or are erroneous as a matter of law. *Zuk v. Hale,* 114 N.H. 813, 330 A.2d 448 (1974). The correct formulation of the discovery rule poses a question of law, but the application of the rule presents a question of fact. 5A L. Frumer, Personal Injury: Actions, Defenses, Damages § 403(3) (d) (iii) (1977).

■ We disagree with the master's formulation of the discovery rule in two important respects. The master stated that the plaintiffs' cause of action accrued when she "either learned or in the exercise of reasonable care *could* have learned . . . of the nature and extent of any negligence of the defendants." (Emphasis added.) The word *could* incorporates an element of chance or remote possibility into the discovery rule instead of the reasonable care standard imposed by the word *should*. Restatement (Second) of Torts § 12 (1965). Although in some cases the result might be the same if the master's rule were used, the correct rule imposes only a duty of reasonable care upon a potential plaintiff, not the risk of nondiscovery despite the exercise of due diligence. 117 N.H. at 167, 371 A.2d at 172; 116 N.H. at 731, 366 A.2d at 473; 114 N.H. at 324, 320 A.2d at 639.

Second, under the test applied by the master a cause of action accrues under the rule when the plaintiff has an opportunity to learn of the harm and that the defendant is responsible for it even if no misconduct is then apparent. This formulation omits an essential element of a cause of action for negligence, *i.e.,* the defendants' breach of duty. W. Prosser, The Law of Torts 143 (4th ed. 1971).

The defendants argue in support of the master's ruling that the New Hampshire discovery rule does not require that the plaintiff learn or have a reasonable opportunity to learn of the defendants' breach of duty before a cause of action will accrue. An examination of our holding in *Raymond* leads to an opposite conclusion. The

issue in *Raymond* was whether the discovery rule tolls the statute of limitations in a drug products liability case until the plaintiff discovers or has a reasonable opportunity to discover that he has suffered a legal injury for which the defendant may be liable. In our affirmative answer to this question we set out a rule to be applied in future cases. The rule states that "[a] cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." 117 N.H. at 171, 371 A.2d at 174.

■■ Although knowledge of the defendants' breach of duty is not expressly included in our formulation in *Raymond,* the affirmative answer to the certified question and the reasoning on which it was based indicate that discovery or a reasonable opportunity to discover the wrongful nature of the defendants' conduct is an essential component of the New Hampshire rule. Consequently, the rule to be applied in cases such as the one before us is: A cause of action will not accrue until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendants' *wrongful* conduct. The defendants' proposed version of the rule would bar a negligently injured party's cause of action before he has had even a reasonable opportunity to discover that it exists. To avoid this unfairness we conclude that the applicable statutes of limitation in this case did not begin to run until the plaintiffs knew or reasonably should have known of the defendants' negligence. *Abernethy v. Smith,* 17 Ariz. App. 363, 498 P.2d 175 (1972); *Rawlings v. Harris,* 265 Cal. App. 2d 452, 455, 71 Cal. Rpts. 288, 295 (1968); *Owens v. Brochner,* 172 Colo. 525, 474 P.2d 603 (1970); *Yoshizaki v. Hilo Hosp.,* 50 Hawaii 150, 433 P.2d 220 (1967); *Hecht v. First Nat'l Bank,* 208 Kan. 84, 490 P.2d 649 (1971).

The plaintiffs argue that under a correct statement of the discovery rule, the evidence does not support a finding that the plaintiffs' cause of action accrued prior to October 18, 1973. This was the date on which it was first suggested to the plaintiff Martha Brown that she might have sustained permanent damage from the PTU treatment. The master found that the plaintiff Martha Brown's cause of action accrued in 1968 because at that time "she

either learned or in the exercise of reasonable care could have learned . . . of the nature and extent of any negligence of the defendants." As stated above, the issue when reviewing a master's factual determinations "is not . . . whether on the reported evidence, the members of this court would find as the master has found, but whether any reasonable man could so find." *Weeks v. Morin*, 85 N.H. 9, 12, 153 A. 471, 472 (1931). The evidence presented by the record shows that in 1968, upon completion of her treatment at the Hitchcock Hospital, the plaintiff was told by the defendant Doctor Sobel that she had made a complete recovery from her adverse reaction to the PTU and that she had sustained no permanent damage. The plaintiff's uncontroverted testimony before the master indicates that she fully relied on Dr. Sobel's assurances. It would be both harsh and incongruous to hold that the plaintiff was put on notice of her cause of action immediately after being told by her physician that she was cured. *Renner v. Edwards*, 92 Idaho 836, 839, 475 P.2d 530, 533 (1970); *Developments, supra* at 1201.

The evidence further shows and is likewise uncontroverted that the plaintiff relied on the diagnoses of the other doctors whom she consulted between 1968 and 1973. Even after being informed of the plaintiff's medical history, none of these doctors were able to detect a connection between the plaintiff's prior intake of PTU and her condition. It was not until October 18, 1973, that one doctor suggested that there may have been some permanent damage caused by the intake of PTU. Finally, the evidence shows that, although the plaintiff was aware of her adverse reaction to PTU, she reasonably relied on assurances that the effects were commonplace and only temporary. There is no evidence that the plaintiff knew or should have known of any negligent conduct of the defendants prior to October 18, 1973. We therefore hold that the defendants have not met their burden of proving their statute of limitations defense and, further, that a finding that the plaintiff Martha Brown's cause of action accrued at any time prior to October 18, 1973, is unsupported by the evidence. Consequently, the plaintiffs' claims are not barred by the statutes of limitations.

*Exceptions sustained.*

GRIMES, J., did not sit; the others concurred.