Merrimack
No. 79-260

### AETNA INSURANCE COMPANY

v.

### AMERICAN SKI CORPORATION *& a.*

December 28, 1979

*Wadleigh, Starr, Peters, Dunn & Kohls,* of Manchester (*Theodore Wadleigh* orally), for the plaintiff.

*Perkins, Upshall & Robinson,* of Concord (*Frederick E. Upshall, Jr.,* orally), for the defendants.

PER CURIAM. The issue in this case is whether the evidence supports the finding that a ski accident involving Thomas A. Ritzman occurred after twelve o'clock noon on December 19, 1970, after

insurance coverage had expired. We hold that the evidence was sufficient.

On December 19, 1970, defendant, Thomas A. Ritzman, was injured in a ski accident when he fell on Cannon Mountain in this State. He brought suit against the American Ski Corporation (American) alleging that his injury resulted from a defective ski binding purchased from American's dealer. Aetna Insurance Company (Aetna) had insured American, but the policy expired at noon on December 19, 1970, the day of the accident. Aetna petitioned for declaratory judgment that its policy did not cover the accident because it occurred after noon. The case was heard before a Master (*Robert A. Carignan*, Esq.) who found that the accident occurred after twelve o'clock noon and that the policy was not in effect at the time of the accident. A decree was entered in accordance with the report by *Batchelder*, J., who transferred defendants' exceptions.

■ Defendants concede, as they must, that the findings of the master are binding on this court if they are supported by evidence from which a reasonable person could have reached the same conclusion. *See, e.g., Ballou v. Ballou*, 118 N.H. 463, 387 A.2d 1169 (1978); *Brown v. Mary Hitchcock Memorial Hosp.*, 117 N.H. 739, 378 A.2d 1138 (1977). The burden of proof, of course, was on Aetna. RSA 491:22-a (Supp. 1977).

Three witnesses supplied the evidence in this case. One Harrison, a ski patrolman who attended Dr. Ritzman, testified that the accident occurred at 12:30 P.M. This was based upon a reconstruction of events from a report which he had made out at the time. The estimate of the time of the accident was based on the time it would take word of the accident to get to the ski patrol, for him to get to the scene and from there to the base lodge. The other two witnesses were Dr. Ritzman and his skiing companion, Sharon Higgins, who both testified from memory created by hypnosis that they met at the bottom of the mountain shortly after eleven, waited in line, rode the lift, got off and skied to the tramway which they got on and rode to the top where they arrived at 11:35. They testified they went into the lodge to eat but the restaurant was too crowded so at seventeen to fifteen minutes of 12:00 they went out and put on their skis and started down the mountain, stopped and rested and then started down again when the accident happened.

In answer to interrogatories, however, Dr. Ritzman stated that he had spent the morning on two lower tracks and at "noontime ... went to the Restaurant at the top of Cannon Mountain to get lunch." He stated that he took off his skis and placed them inside the Ski Patrol

Room to avoid theft and then went upstairs to the restaurant. After staying there a few moments, he decided not to wait and went back out to get his skis. He then put on his skis and skied the Upper Cannon Trail, stopping at the top of a long open area leading to different routes. He said that he spent ten minutes at the top of Upper Cannon Trail, and that he stood at the bottom of that trail for about ten more minutes before starting down the Middle Cannon Trail when the accident occurred.

At the hearing, Dr. Ritzman explained that "noontime" as used in his answer to the interrogatories meant the "center of the day" between morning and night and not exactly twelve o'clock. He also stated that his earlier estimate that he had rested at the bottom of Upper Cannon Trail ten minutes was too long.

The testimony of Harrison supports the court's finding in spite of the fact that he was led into calling his estimate a "guess." The fact is that it was based upon his knowledge of the time it took him to respond to the call for help and move the victim to the bottom of the mountain. He also noted the distance from the scene of the accident to the telephone and he allowed for the time it would take a person to reach the victim and get to the telephone. The testimony of Mrs. Higgins, the person with whom Ritzman was skiing and who had come to his aid, supports a finding that the time was not long. Moreover, Harrison's estimate of the time of the accident would allow for a half-hour error. The master could reasonably have found that Harrison did not err to that extent.

Moreover, Dr. Ritzman's answers to the interrogatories would also support the master's findings because the master was not required to accept the explanation of "noontime." In sum, we hold that the finding that the accident occurred after 12 o'clock noon could reasonably be made on the evidence before the master.

*Exceptions overruled.*

DOUGLAS and BROCK, JJ., did not sit.