698 P.2d 365

**Annette Yvonne THERIAULT,
Plaintiff-Appellant,**

v.

**A.H. ROBINS COMPANY, INCORPORATED, Defendant-Respondent.**

**No. 15272.**

Supreme Court of Idaho.

April 5, 1985.

E. Lee Schlender, Ketchum, for plaintiff-appellant.

Richard E. Hall, and Raymond D. Powers, of Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-respondent.

DONALDSON, Chief Justice.

Appellant, Annette Theriault, initiated this action seeking damages for personal injuries she allegedly received due to her use of an intrauterine device, commonly known as the Dalkon Shield, manufactured and distributed by respondent, A.H. Robins Company. Theriault had a Dalkon Shield inserted on March 11, 1974 at the Family Planning Clinic in Boise. Approximately seven months later, she signed a form, given to her by the clinic stating that she had been advised of the possible hazards associated with the use of the Dalkon Shield and that she elected not to have it removed.[1]

---

1. The form read as follows:

"Date 10/7/74

"I have been advised of the possilbe [sic] complications and health hazards associated with the Dalkon Shield Intrauterine Device.

"I have also been advised that the family planning clinic can make arrangements for removal of my Dalkon Shield.

"However, I do not wish to have my Dalkon Shield removed at this time. I understand

Barbara Ann Plain, a nurse practitioner at the clinic during the period Theriault was a patient there, testified in her deposition as to the reason for the consent form:

"In about the summer of 1974 it came to everyone's attention that we were having some problems—women were dying in relationship when they had Dalkon Shields with infectious process.

"And then it was about September—and I'm not sure of the dates, but it was about September that the Federal Drug Administration recommended that these devices could be left in place if the patient was not having any difficulties, that she should be informed that if she had any signs of infection or if she had really specifically a fever or pain or bleeding or if she became pregnant, that these should be removed.

"And all our patients that had a Dalkon Shield were called in and we gave them all this information. And then they could decide whether or not they wanted to keep the IUD or whether they could have it removed.

"And that's what this document is."

She further testified that patients with Dalkon Shields were informed of the risk of infection and bleeding and of complications that could result should they become pregnant while using the Dalkon Shield. As to infection, she stated that patients were told that serious complications could result if they got an infection while using the Dalkon Shield.

Theriault stated in her deposition that she did remember signing the document.

She further stated that she did not recall ever receiving any information about possible risks or complications associated with use of the Dalkon Shield.

On June 6, 1977, Theriault was diagnosed as suffering from Pelvic Inflammatory Disease. She was advised that, due to the infection, the Dalkon Shield should be removed. It was not removed, however, and in July 1978, she again experienced pelvic problems. The Dalkon Shield was removed on July 31, 1978.

On March 24, 1982, Theriault filed an action for damages against A.H. Robins. Robins asserted that the action was barred by the statute of limitations and moved for summary judgment. The trial judge determined that I.C. § 5–219(4) applied and granted Robins' motion for summary judgment holding that Theriault's action was barred by the two-year statute of limitations contained therein. Theriault appeals from that decision. She asserts that summary judgment was inappropriate as there existed a genuine issue of material fact as to whether Robins was guilty of fraudulent concealment. In addition, she asks this Court to adopt the discovery rule for determining the date of accrual in personal injury and professional malpractice actions.

I.C. § 5–219(4) sets forth a general two-year statute of limitations for personal injury actions. With the exception of cases involving a foreign object unintentionally left in the body or fraudulent concealment, the statute begins running at the "time of the occurrence, act or omission complained of...."[2] In the present case, the trial

---

that I may contact the family planning clinic in the future if I wish to have it removed.

    "Signed  <u>Annette Herbst</u>
            date       .
    "Witnessed  <u>Helen  Stewart  LPN  &  A.P.</u>
              date"

**2.** I.C. § 5–219 in pertinent part reads as follows:

    "4. An action to recover damages for professional malpractice, or for an injury to the person, or for the death of one caused by the wrongful act or neglect of another, including

any such action arising from breach of an implied warranty or implied covenant; provided, however, when the action is for damages arising out of the placement and inadvertent, accidental or unintentional leaving of any foreign object in the body of any person by reason of the professional malpractice of any hospital, physician or other person or institution practicing any of the healing arts or when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, ne-

court concluded that the date on which the Dalkon Shield was removed, July 31, 1978, was the last possible date it could have caused injury to Theriault, and, thus, that it was also the last possible date on which the two-year statute of limitations could have begun running. Theriault asserts that her complaint comes within the statutory exception for fraudulent concealment and, therefore, that the statute did not begin to run until she knew or was charged with knowledge of her potential cause of action. She contends that she was not aware that her injuries were directly attributable to the Dalkon Shield until she watched a "60-Minutes" program linking Pelvic Inflammatory Disease to the Dalkon Shield in the spring of 1981. She asserts that the statute of limitations did not begin running until that point, and, thus, that her action was commenced within the statutory period.

This case is before us following a dismissal pursuant to Robins' motion for summary judgment under the applicable statute of limitations. In *Johnson v. Gorton*, 94 Idaho 595, 495 P.2d 1 (1972), this Court set forth the test for measuring the sufficiency of materials to overcome a motion for summary judgment based on the statute of limitations.

"Summary judgment is proper if the evidence before the court on the motion would warrant a directed verdict if the case were to go to trial. When the moving party presents materials which would entitle him to a directed verdict if presented at trial, the responding party

may not hold back his evidence; he must present sufficient materials to establish a triable issue. Those materials must set forth the facts with particularity; for if general averments were sufficient the summary judgment procedure would lose its utility. *The requirement of specificity is underscored in cases where the moving defendant has established, prima facie, a defense grounded on the statute of limitations."* *Id.* at 598, 495 P.2d at 4 (emphasis added). See also, *Cook v. Soltman*, 96 Idaho 187, 189, 525 P.2d 969, 971 (1974).

■■■ Theriault alleges, in her amended complaint, that "Robins, at all times until date of this Amended Complaint, for purposes of escaping responsibility for negligence, gross negligence and damages has fraudulently and knowingly concealed information regarding the Dalkon Shield Device from the plaintiff and the general public." She contends that the allegations of fraudulent concealment in her complaint, unsupported by any affidavits or other evidentiary materials, are sufficient to raise a triable issue as to whether Robins was guilty of fraudulent concealment. However, as we have previously stated a party defending a motion for summary judgment may not rest on its pleadings, but must offer affidavits or other evidentiary materials which demonstrate that an issue of fact remains. *First Piedmont Bank and Trust Company v. Doyle*, 97 Idaho 700, 551 P.2d 1336 (1976). I.R.C.P. 56(e) states:

glect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of; but in all other actions, whether arising from professional malpractice or otherwise, the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer, and, provided further, that an action within

the foregoing foreign object or fraudulent concealment exceptions must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission complained of, whichever is later. The term 'professional malpractice' as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho. This subsection shall not affect the application of section 5–243, Idaho Code, except as to actions arising from professional malpractice. Neither shall this subsection be deemed or construed to amend, or repeal section 5–241, Idaho Code."

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations of denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

As we noted above, this requirement of specificity is underscored where, as here, the other party has established a prima facie defense on the statute of limitations. In addition, I.R.C.P. 9(b) requires that when a party is alleging fraud, the circumstances constituting the fraud must be stated with particularity.

■ Theriault has failed to produce any evidence of conduct by Robins designed to conceal facts in an effort to hinder her in prosecuting her claim; nor is there anything in the record to show that Robins concealed material facts or made false representations which lulled Theriault into inaction during the period in which she could have brought this lawsuit. We conclude that the evidence of fraudulent concealment, even when viewed in the light most favorable to appellant, was insufficient to establish a triable issue.

■ Theriault also asserts that Robins should be equitably estopped from even raising the statute of limitations as a defense. The doctrine of equitable estoppel prevents a party from pleading and utilizing the statute of limitations as a bar, even though it has run. This Court has recognized that a party may be estopped from raising the statute of limitations as a defense. *Twin Falls Clinic and Hospital Bldg. v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982). The elements of equitable estoppel as set out in *Hamill, supra,* are:

"(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth, (2) the party asserting estoppel did not know or could not discover the truth, (3) the false representation or concealment was

made with the intent that it be relied upon and (4) the person to whom the representation was made or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Id.* at 22, 644 P.2d at 344.

A defendant will be estopped from raising the statute of limitations as a bar to plaintiff's action where defendant's representations or conduct dissuaded the plaintiff from prosecuting his or her cause of action during the statutory period. *Holmes v. Iwasa,* 104 Idaho 179, 183, 657 P.2d 476, 480 (1983). *See also, Twin Falls Hospital Bldg. v. Hamill, supra.*

■ As we stated above, there is no evidence in the record to show that Robins concealed any material facts or made any false representations which lulled Theriault into inaction during the statutory period. Furthermore, there is no evidence before us to indicate that Theriault relied on any representations by Robins in waiting to file her action. As the record fails to disclose any evidence which would raise a material issue as to whether Robins should be estopped from raising the statute of limitations, we are constrained to hold that this is an inappropriate case for applying the doctrine of estoppel.

Appellant cites the recent 9th Circuit decision in *Allen v. A.H. Robins Co., Inc.,* 752 F.2d 1365 (1985) as support for her argument that summary judgment was inappropriate in the case at bar. In *Allen,* the 9th Circuit, applying Idaho law, held that summary judgment was inappropriate in a factual situation similar to the one at bar. Appellant, Sandy Allen, filed suit against A.H. Robins seeking damages for injuries that allegedly resulted from her use of the Dalkon Shield. She alleged that Robins falsely represented facts about the Dalkon Shield both to the medical profession and the public and that it knowingly concealed material facts concerning the safety of the Dalkon Shield. The district court granted summary judgment in favor of Robins, holding that appellant's action was barred under I.C. § 5–219(4). On ap-

peal the 9th Circuit reversed, concluding appellant had succeeded in raising a material issue of fact, both as to the fraudulent concealment exception to I.C. § 5–219(4) and as to whether Robins should be equitably estopped from raising the statute of limitations as a defense, and, thus, that summary judgment was inappropriate.

*Allen* differs from the present case in one crucial aspect, however. In *Allen* the appellant submitted depositions, interrogatories and documents prepared by Robins which tended to establish that Robins was aware of the problems associated with the Dalkon Shield and that it concealed this information from the public.

> "In support of their claims that Robins was aware of the dangers associated with the use of the Dalkon Shield, the Allens submitted several documents, including both internal memoranda of the A.H. Robins Company and letters and publications intended for physicians and wholesale distributors of the product.... This information was not released to either the medical profession or to users of the Dalkon Shield until 1974.... Most important, the Allens submitted evidence that Robins had significant information in its possession regarding the 'wick effect' created by the Dalkon Shield—an effect that permits bacteria to enter sterile places, and that may lead to pelvic inflammatory disease and sterility." *Allen, supra*, at 1367.

As we noted above, the record in the present case is devoid of any such documents.

■ Finally, Theriault asks this Court to engraft a discovery exception to the statute of limitations contained in I.C. § 5–219(4). She urges us to hold that a cause of action does not accrue under I.C. § 5–219(4) until the injured party discovers or should have discovered the facts giving rise to the cause of action. This we decline to do.

Prior to March 24, 1971, I.C. § 5–219(4) simply provided that an action for personal injuries had to be brought within two years. The statute contained no reference to the relationship between accrual of a cause of action and knowledge of the same. In 1964, this Court created a limited discovery exception in cases where a foreign object was negligently left in a patient's body. *Billings v. Sisters of Mercy of Idaho*, 86 Idaho 485, 389 P.2d 224 (1964). We held that in such cases a cause of action did not accrue until the patient knew, or in the exercise of reasonable diligence should have known, of the presence of the foreign object. *Id.* at 498, 389 P.2d at 232. In 1969, we extended this exception to cover misdiagnosis cases; holding that the statute of limitations did not begin to run until the plaintiff knew or should have known of the misdiagnosis. *Renner v. Edwards*, 93 Idaho 836, 475 P.2d 530 (1969).

Then, in 1971, the legislature substantially amended I.C. § 5–219(4). The amendment narrowed the scope of the discovery exception, limiting it to cases involving foreign objects or fraudulent concealment. 1971 Idaho Sess.Laws ch. 180, pp. 845–47. In all other instances, the statute provided that "the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of...." Our subsequent cases have recognized that the 1971 amendment was enacted in response to the *Renner* decision. *See, e.g., Holmes v. Iwasa*, 104 Idaho 179, 657 P.2d 476; *Martin v. Clements*, 98 Idaho 906, 575 P.2d 885 (1978); *Johnson v. Gorton*, 94 Idaho 595, 495 P.2d 1.

Since the 1971 amendment, in deference to the legislative policy expressed therein, this Court has consistently refused to create additional discovery exceptions. We are not persuaded that the facts of this case mandate an abandonment of this judicial deference.

The trial court concluded that July 31, 1978, the day appellant had the Dalkon Shield removed, was the last possible day it could have caused damage to her, and, thus, that it was the last day on which the statute of limitations could have begun running. As Theriault did not file her complaint within two years of that date, and as the court found no facts in the record to raise a material issue of fraudulent con-

cealment, it granted respondent's motion for summary judgment. We affirm the grant of summary judgment on the basis that appellant's claim was barred by the statute of limitations.

Costs to respondent.

SHEPARD, BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

### I.

Not only do I disagree with the majority, but its decision may very well run afoul of constitutional law. By refusing to hold that a cause of action accrues under I.C. § 5–219(4) only after the injured party discovers (or reasonably should have discovered) the facts giving rise to his or her cause of action, the majority is seemingly oblivious to art. 1, § 18 of the Idaho Constitution, wherein it mandates that: "Courts of justice shall be *open* to *every person,* and a speedy remedy afforded for *every injury* of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice." (Emphasis added.)

In declining to properly determine when a cause of action accrues under I.C. § 5–219(4), the majority reaches the anomalous result that in some instances a plaintiff will find himself barred from the courts even before discovering, or having had a reasonable opportunity to discover, the harm inflicted upon him or her by a negligent party. It is difficult to fathom a more grossly unjust result. This Court's acquiescence in the legislature's amending of I.C. § 5–219(4), so as to only allow application of the discovery rule in cases involving foreign objects or fraudulent concealment, is a judicial abrogation of this Court's duty to uphold and protect the constitutional rights of the citizens of this state.

It is conceded that the legislature can legislate, but in so doing, it cannot contravene the Constitution. This Court should not be party to the closing of the courtroom door before a plaintiff has learned that he has good cause for judicial redress. As the United States Supreme Court long ago declared:

> It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; *if it should do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions.* Wilson v. Iseminger, 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902) (emphasis added).

In simple direct language the Idaho Constitution directs that the courts of this state be open to *every person,* and a speedy remedy afforded for *every* injury suffered. This Court should be the first to heed this mandate. Nothing justifies ignoring it.

This is not to say that art I, § 18 invalidates statutes of limitations *per se.* Clearly, such is not the intent of § 18. What this section does provide, however, is that all people have a reasonable opportunity to seek redress through this state's court system. Fundamental fairness requires no less.

### II.

In *Renner v. Edwards,* 93 Idaho 836, 475 P.2d 530 (1970), this Court expanded the discovery rule so as to include not only cases involving foreign objects or fraudulent concealment, but misdiagnosis cases, too. The result in *Renner* to my mind harmonized the application of this state's statute of limitations with art. I, § 18. The reasoning of Justice Shepard for requiring the discovery rule in all cases is persuasive:

> *It would, in our opinion, be manifestly unjust to bar the enforcement of injury claims brought by a plaintiff who was not, nor could not have known that he was, the victim of tortious conduct because the consequent harm was unknowable within two years of the negli-*

gent act. In this age of enlightened medicine and highly sophisticated curative treatment it is very likely that the maturation of injury resulting from negligent treatment would not evidence itself for well after the two years provided for in the statute of limitations.... This thought becomes particularly disturbing when one realizes that the latent injuries arising from medical malpractice would very likely go undetected by the victim, as only trained and skillful practitioners of medicine could ascertain whether a patient has been mistreated. Even the physical symptoms which might herald future inquiry may well be beyond the comprehension or perception of the average layman.

... *To construe the statute narrowly so as to preclude a person from obtaining a remedy simply because the wrong of which he was a victim did not manifest itself for at least two years from the time of the negligent conduct, is clearly inconsistent with the concept of fundamental justice. To require a man to seek a remedy before he knows of his rights, is palpably unjust.* Under such circumstances in order for a patient to secure and protect his legal rights against doctors for malpractice, the patient would be required to submit himself to complete examinations by a series of independent physicians after every operation or treatment he received from the physician of his first choice. The unreasonableness of such a result is self-evident. *No statute should be construed to bring about a patently inane result; moreover, we have often said the legislature could never be presumed to have intended to enact laws which are absurd, unjust or unreasonable. Id.* at 839, 475 P.2d at 533 (emphasis added).

On rehearing in *Renner,* Justice Donaldson also argued persuasively for application of the discovery rule to the forerunner of today's I.C. § 5–219(4):

I concur with the majority's opinion that in cases of negligent misdiagnosis the Statute of Limitations begins to run from the time the wrongful act was dis-

covered or the date that the plaintiff, by the exercise of reasonable diligence, should have discovered it. *The Court has previously adopted this rule as to foreign objects left within the body in Billings v. Sisters of Mercy of Idaho, 86 Idaho 485, 389 P.2d 224 (1964) and I can see no rational basis for a distinction between one kind of malpractice and the other. It is manifestly inconsistent and unfair to bar a negligently injured party's cause of action before he even had an opportunity to discover that it existed.* This is as true where it consists of negligent misdiagnosis or treatment as when a foreign object is left within the body. *The application of the "discovery rule" to all medical malpractice cases seems to be the modern trend. Renner, supra,* at 842–43, 475 P.2d at 536–37 (emphasis added).

If refusal to recognize a general discovery rule is, as Justice Shepard puts it, "palpably unjust" and "inconsistent with the concept of fundamental justice," or as Justice Donaldson puts it, "manifestly unfair," then under what rationale can the legislature's attempted repeal of *Renner* be viewed as permissible? Constitutionally, there is no rationale; this is exactly what art. I, § 18 was meant to prevent—the "unjust" and "unfair" closing of this state's courtrooms to injured and oppressed citizens before they have been granted a viable opportunity to enter. Those persons entertaining serious concerns about the protection of individual constitutional rights can only wonder in amazement today at the unseemly retreat of Justice Donaldson and Justice Shepard from their eloquent, sound, and persuasive views of fifteen years ago.

Subsequent opinions handed down since *Renner,* rather than forthrightly declaring unconstitutional the legislature's attempted overruling of this Court's holding in *Renner,* have chosen instead the path of acquiescence and obeisance. *See, e.g., Holmes v. Iwasa,* 104 Idaho 179, 181, 657 P.2d 476, 478 (1983); *Twin Falls Clinic & Hospital v. Hamill,* 103 Idaho 19, 26, 644 P.2d 341,

348 (1982). In no case, however, has this Court yet dealt specifically with the constitutional requirements of art I, § 18. *Renner* came close, as witnessed by the language of Justice Donaldson and Justice Shepard. Most constitutional lawyers would equate the language in *Renner* of "manifestly unjust," "palpably unjust," "clearly inconsistent with the concept of *fundamental justice*," and "no rational basis for a distinction," with notions of constitutional law. This is evidenced by the fact that various authors of this Court's opinions have often used these terms when constitutional requirements were at stake.

Somewhat contrary to the promise of *Renner*, in *Jones v. State Board of Medicine*, 97 Idaho 859, 864, 555 P.2d 399, 404 (1976), this Court held that art. I, § 18 does not vest in the citizens of this state rights to recovery for injuries to person and property which existed at the time our Constitution was adopted. Accordingly, the Court held that the legislature can alter common law remedies and attach conditions precedent to the exercise of these common law rights without providing alternative or substitute remedies which existed at the time our Constitution was adopted. *Accord, Twin Falls Clinic, supra.* With that much I am able to agree. But *Jones* says *nothing* about the legislature's attempting to preclude a citizen from seeking a remedy before knowing or having a reasonable opportunity to discover his or her injury, and whether such an attempt is invalid pursuant to art I, § 18 of our Constitution.

In *Holmes, supra; Twin Falls Clinic, supra;* and *Jones, supra,* this Court has also upheld, respectively, I.C. §§ 5–219, 5–241, and 39–4201, *et seq.,* against equal protection and due process challenges. Like *Jones, supra,* however, none of these cases purport to determine whether the *Renner* discovery rule is constitutionally mandated. In *Twin Falls Clinic, supra,* the Court did acknowledge the legislature's attempted repeal of the *Renner* discovery rule holding, but did not even purport to determine—or even discuss—whether the legislature had acted within the constitutional bounds of art I, § 18. *Twin Falls Clinic, supra,* 103 Idaho at 26, 644 P.2d at 348.[1]

Therefore, the time is now for this Court to meet the issue. On any adequate analysis, the only conclusion to be reached is that the *Renner* discovery rule is constitutionally required. Courts from other states addressing this issue have also so concluded.

### III.

In *Barrio v. San Manuel Division Hosp. of Magma Copper*, 143 Ariz. 101, 692 P.2d 280 (1984), the Arizona Supreme Court addressed the issue of whether the Arizona legislature could require a minor injured under the age of seven years to bring his or her action for damages before reaching the age of ten. *See* A.R.S. § 12–564(d). Noting that the legislature could properly

1. Justice Shepard, for a majority consisting of himself, Justice Donaldson, and, in part, Justice McFadden stated:

Appellant Twin Falls finally asserts that a discovery exception to the statute of limitations for professional malpractice, I.C. § 5–219(4), should be engrafted by this Court. In prior cases, *Billings v. Sisters of Mercy*, 86 Idaho 485, 389 P.2d 224 (1964), and *Renner v. Edwards*, 93 Idaho 386, 475 P.2d 530 (1969), this court has so acted to engraft a discovery exception to the otherwise existing statutes of limitation; however, the court was careful to point out therein that it was doing so only in the absence of legislative direction and hence on the basis of what it perceived to be valid policy considerations. Since that time, however, the legislature has acted in the area of

defining the point in time at which a cause of action accrues, sometimes in accordance with the decisions of this Court and sometimes with a differing view which we deemed to have effectively overruled the decisions of this Court. *This court has thereafter acted in deference to those legislative policy decisions. Owyhee County v. Rife,* 100 Idaho 91, 593 P.2d 995 (1979); *Martin v. Clements,* 98 Idaho 906, 575 P.2d 885 (1978). *We are not* at the present time *persuaded that such judicial deference* to legislative policy making *should be abandoned* and we adhere to those decisions and decline to create a further discovery exception to the statutes of limitations governing architects negligence. *Twin Falls Clinic, supra,* at 103 Idaho 26, 644 P.2d at 348 (emphasis added).

*regulate* the time within which a plaintiff must bring his or her cause of action, it held that under art. 18, § 6 of the Arizona Constitution (which prohibits the *abrogation* of the right of action to recover damages for injury), this attempt by the legislature constituted an abrogation of the right to seek damages for injury. *Barrio, supra,* 692 P.2d at 286. Therefore, the limit was held unconstitutional. The court further set down the test for differentiating between valid regulatory statutes of repose and those which are invalid attempts at abrogating a person's right to seek damages for injuries suffered. The test is as follows:

> "If [the statute] ... were to be construed as taking away the right to pursue the constitutional action of negligence without granting a reasonable *election* to all persons entitled thereto, it would indeed be unconstitutional...." *Ruth v. Industrial Commission,* 107 Ariz. [572,] at 575, 490 P.2d [828], at 831 quoting from *Moseley v. Lily Ice Cream Co.,* 38 Ariz. 417, 421, 300 P. 958, 959 (1931) (emphasis added in *Ruth*).
>
> ....
>
> ... The legislature may regulate the cause of action for negligence so long as it leaves a claimant reasonable alternatives or choice which will enable him or her to bring the action. *It may not, under the guise of "regulation," so affect the fundamental right to sue for damages as to effectively deprive the claimant of the ability to bring the action. Barrio, supra,* 692 P.2d at 285 (emphasis added).

The conclusion of the Arizona Supreme Court in *Barrio* is in harmony with what Id. Const. art. I, § 18 requires: a plaintiff should not be precluded from seeking redress for a wrong before he or she has had a reasonable opportunity to do so.

In *Nelson v. Krusen,* 678 S.W.2d 918 (Tex.1984), the Texas Supreme Court held that a Texas statute [2] which barred any claim for compensation resulting from neg-ligent medical treatment or hospitalization not filed within two years from when the tort occurred or the medical treatment completed, was unconstitutional, being in violation of art. I, § 13 of Texas' Constitution. That provision states in pertinent part: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

The Texas court held that art. I, § 13 of its Constitution precludes the Texas legislature from making a remedy by due course of law contingent on an impossible condition. *Nelson, supra,* at 921. Applying this reasoning, the Court held that a statute of limitations which cuts off a cause of action before the party knows, or reasonably should know, that he is injured, and the cause thereof, imposes an impossible condition upon the plaintiff. Because that was the effect of the statute in question, the Court held it unconstitutional. *Id.,* at 922.

The Texas court's defining of its "open courts" provision so as to require a plaintiff to know, or have the reasonable opportunity to know, that he or she is injured, and the cause thereof, before a statute of limitations can begin to run, is exactly that which Idaho's "open courts" provision mandates.

A far from exhaustive search has revealed that other state supreme courts have reached the same result when faced with the issue similar to that which is before this Court. *See, e.g., Daugaard v. Baltic Co-op Bldg. Supply Ass'n,* 349 N.W.2d 419 (S.D.1984); *Jackson v. Mannesman DeMag Corp.,* 435 So.2d 725 (Ala.1983); *Heath v. Sears, Roebuck & Co.,* 123 N.H. 512, 464 A.2d 288 (1983); *Bolick v. American Barmag Corp.,* 54 N.C.App. 589, 284 S.E.2d 188 (1981), *modified and aff'd,* 306 N.C. 364, 293 S.E.2d 415 (1982); *Battilla v. Allis Chalmers Mfg. Co.,* 392 So.2d 874 (Fla.1980); *Phillips v. ABC Builders, Inc.,* 611 P.2d 821 (Wyo.1980).

---

2. The applicable statute is Article 9.82, section 4 of the Texas Insurance code, subsequently re-pealed and replaced by Tex.Rev.Civ.Stat.Ann. art 4590; § 10.01 (Vernon Supp.1984).

A likewise less than exhaustive search of Idaho's various statutes of limitations reveals that many such statutes *do* apply the *Renner* discovery rule. For example, I.C. §§ 6–905 and 6–906 require aggrieved parties to file their claims against the state or one of its subdivisions within 120 days from the date the claim arose *"or reasonably should have been discovered, whichever, is later."* [3] In addition, the 1985 legislature amended I.C. § 6–911 to permit suits to be filed up to two years after the claim arose or *"reasonably should have been discovered, whichever is later."* 1985 Idaho Sess.Laws, Chap. 136 (HB 61).

I.C. § 5–237 states that actions brought against the directors or stockholders of a corporation must be brought within *"three years after the discovery by the aggrieved party of the facts upon which ... liability was created."* I.C. § 5–243 bars actions to recover for radiation injuries which are not brought within three years *"after the person suffering such injury had knowledge or ought reasonably to have had knowledge of having suffered the injury and the cause thereof."* The statute does impose a time limit within which such claims must be filed—but the maximum time extends for 30 years!

The policy reasons for tolling these statutes begin running until an individual has had reasonable opportunity to ascertain the facts and cause of his or her injuries apply equally to I.C. § 5–219(4). Why, then, the discrepancy—a discrepancy favoring the medical profession? The answer probably lies in the fact that tort victims have no association representing them, and have no financially well-endowed group lobbying the legislature for them.

Reasoning and precedent are overwhelmingly in favor of a citizen having the right of reasonable access to his or her state's courtrooms. This Court does a monumental disservice by failing to address this issue and opting instead to blithely continue acquiescing 'in an unconstitutional abrogation of citizens' rights of access to their courts to seek redress for injuries suffered.

Properly applying the discovery rule mandated by our Constitution, it is readily apparent that I.C. § 5–219(4) is inapplicable and cannot bar Annette Theriault's suit, where she did not learn or could have reasonably learned the cause of her injuries until she watched in 1981 a "60-Minutes" program linking the ailments she was suffering with use of a Dalkon Shield. Therefore, it is only from that point in which I.C. § 5–219(4)'s two-year time period can begin to run. Because her suit was filed in 1982, her suit is not barred, it having been filed within the two-year limit imposed by I.C. § 5–219(4).

---

## IV.

This Court's prior decisions upholding the constitutionality of I.C. §§ 5–219, 5–241, and 39–4201 *et seq.* against equal protection and due process challenges do not purport to be the last word on *all* such challenges.

In *Jones, supra,* this Court upheld against an equal protection attack the classification which I.C. § 39–4201 *et seq.* makes between people damaged for over $150,000 and those damaged for less than that amount, by setting a ceiling of recovery one can obtain from a hospital at $150,000.

In *Twin Falls Clinic, supra,* this Court upheld the classification I.C. § 5–241 makes in affording architects and builders special protection while denying owners, occupants, and suppliers of the same buildings worked on similar protection. *Holmes, supra,* simply follows *Twin Falls Clinic, supra,* in upholding I.C. § 5–219.

*Significant, however, is the absolute fact that no case in Idaho has yet decided whether the classification I.C. § 5–219 makes between patients whose claims are premised on the existence of a foreign object or fraudulent concealment and those whose claims are based on a differ-*

---

**3.** 1985 Idaho Sess.Laws, Chap. 136 (HB 61), effective July 1, 1985, extends the time period within which a claim must be filed from 120 days to 180 days.

*ent cause, such as negligent misdiagnosis, violates equal protection.* It is interesting to note, therefore, that the supreme courts of Colorado and New Hampshire on this very issue have held that statutory limitations provisions identical to that found in Idaho violate equal protection insofar as they made the "discovery rule" unavailable to all medical malpractice plaintiffs except those whose actions were based on discovery of a foreign object or a knowing concealment of the negligent act on the defendant's part. *See Austin v. Litvak,* 682 P.2d 41 (Colo.1984); *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825 (1980).

In the Colorado case, the court applied the "rational basis" test, requiring first, that the classification be not arbitrary, but reasonable, and second, that the classification bear a rational relationship to a legitimate governmental interest. *Austin, supra,* at 50. In the New Hampshire case, the court applied the test of whether the challenged classifications were reasonable and had a "fair and substantial relation" to the object of the legislation, noting that its only inquiry would be whether the legislature could have reasonably conceived to be true the facts on which the challenged legislative classifications are based. *Carson, supra,* 424 A.2d at 831.

In both cases, the two courts struck down the various statutes being challenged —C.R.S. 13–80–105 and R.S.A. 507–C:4 (Supp.1979)—because of the irrational, arbitrary, and unfair classification they attempted to make. The Colorado Supreme Court stated, in quoting the Oregon Supreme Court:

"On a theoretical basis it is impossible to justify the applicability of the discovery rule to one kind of malpractice and not to another. The reason for the application of the discovery rule is the same in each instance. It is manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he had had an opportunity to discover that it exists. *This is true whether the malpractice consists of leaving a foreign object in the body or whether it*

*consists of faulty diagnosis or treatment." Austin, supra,* at 50, quoting *Frohs v. Greene,* 253 Or. 1, 452 P.2d 564, 565 (1969) (emphasis added).

The New Hampshire Supreme Court declared:

The [discovery] rule is premised on "the manifest unfairness of foreclosing an injured person's cause of action before he has had even a reasonable opportunity to discover its existence." *Brown v. Mary Hitchcock Memorial Hosp.,* 117 N.H. 739, 741–42, 378 A.2d 1138, 1139–40 (1977). Although the discovery rule was initially employed in this State in a "foreign-object" case, *Shillady v. Elliot Community Hosp.,* 114 N.H. 321, 320 A.2d 637 (1974), we made it clear in *Brown v. Mary Hitchcock Memorial Hosp.* that the rule and the fundamental equitable considerations underlying it applied to medical malpractice cases generally. 117 N.H. at 741, 378 A.2d at 1139. As such, *the legislature may not abolish the discovery rule with respect to any one class of medical malpractice plaintiffs. Carson, supra,* 424 A.2d at 833 (emphasis added).

I find the rationales put forth, and the conclusions reached by these two courts, to be persuasive. Inasmuch as this Court has yet to decide whether the classification I.C. § 5–219(4) makes between types of medical malpractice plaintiffs violates equal protection, those who wish to continue to assert it should be on notice of the weak constitutional footing upon which it stands.

## V.

The issues I have raised demand deliberation. This Court should not be too quick in preventing Annette Theriault from having her day in court. Rather, it should consider the constitutional ramifications that will proceed from its decision today if left undisturbed. At the least, the majority should request additional briefing on this issue from both parties so as to be assured of a better informed opinion.

HUNTLEY, Justice, concurring specially.

Although I concur in the majority opinion, were there a proper factual basis in this record to raise the issue of whether the classification of I.C. § 5–219 is constitutional I would join the dissent of Justice Bistline. That is to say, I agree with the dissent that the legislature's limitation of the application of the "discovery rule" to foreign objects violates the "equal protection clause." However, this record reflects that the plaintiff did not file her claim within one year of the date she knew or reasonably should have known of her cause of action. Therefore the issue is not presented.